303 Ga. 158
FINAL COPY

S17A1582.  BROWN v. THE STATE.

HUNSTEIN, Justice.

Appellant Melvin Brown, Jr., was tried and convicted of murder and related offenses committed against Javious Tucker and Cyntrelis Boggs.[1]

[1] On April 29, 2014, an Athens-Clarke County grand jury indicted Appellant Melvin Brown Jr., for charges related to crimes committed against Javious Tucker and Cyntrelis Boggs as follows: malice murder of Tucker (count 1); felony murder of Tucker predicated on aggravated assault (count 2); felony murder of Tucker predicated on terroristic acts (count 3); felony murder of Tucker predicated on possession of a firearm by a convicted felon (count 4); aggravated assault of Tucker (count 5); terroristic acts against Tucker (count 6); possession of a firearm by a convicted felon (count 7); aggravated assault of Boggs (count 8); and three counts of use of a firearm by a convicted felon during the commission of another felony (counts 9-11).

Following a trial from August 12-14, 2014, a jury found Brown guilty on all counts.  The trial court subsequently sentenced Brown pursuant to OCGA § 17-10-7 (a) to life without parole for malice murder (count 1), 20 years consecutive for aggravated assault (count 8), and to three consecutive 15-year sentences for the weapons charges (counts 9-11), for a total sentence of life without parole plus 65 years.  The felony murder counts were vacated by operation of law, and all remaining counts merged for sentencing purposes without challenge from the State.  Brown timely filed a motion for new trial on September 4, 2014, which was subsequently amended on July 15, 2016, and November 15, 2016. After a hearing, the trial court denied the motion as amended on April 21, 2017.

Brown timely filed a notice of appeal to this Court.  The appeal was docketed to the August 2017 term of this Court and was thereafter submitted for a decision on

Brown appeals, claiming that the evidence was insufficient to support his convictions, that he received ineffective assistance of counsel, that other acts evidence was erroneously admitted at trial, and that the trial court erroneously failed to grant Brown's motion for a mistrial. Because we find that the trial court committed reversible error by admitting Brown's other acts evidence, we reverse.

1.    Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. On February 2, 2014, Javious Tucker, Cyntrelis Boggs, and Melvin Brown, Jr., all attended a party in Athens-Clarke County, Georgia. At some point during the party, Tucker and Brown began to argue over Brown's refusal to share a small bag of pork skins. The argument became heated, and the two were asked to leave the party. The fight continued outside; the pair were eventually separated, and Brown walked down the road toward another house at the bottom of a steep hill. Tucker and Boggs followed in Tucker's car, driving down the hill toward Brown. There, the men re-engaged in their argument, which included an exchange of words, Brown tugging on the driver's side door handle of Tucker's car, and Tucker exiting the

the briefs.

2

vehicle and waving a tire iron in a menacing manner. After more cursing and threats, Brown walked back up the hill to put some distance between himself and Tucker. Boggs encouraged Tucker to drop the argument and leave the neighborhood.

While Tucker was driving back up the road, Brown reached his car over the crest of the hill and retrieved a pistol. Though there were no eyewitnesses to the shooting, the physical evidence at the scene suggested that Brown walked back toward Tucker's oncoming car and fired multiple shots, working his way around the vehicle. Boggs, who was in the car with Tucker, testified that, when the shooting began, he could not see or identify the shooter because he was blinded by the setting sun. Additionally, according to other witnesses, the path up the hill was so steep that it would have been very hard for a driver to see over the crest of the hill.

After the shooting, Brown fled the scene. When law enforcement arrived, Tucker was found inside his vehicle; the bottom half of his body was in the front seat, and his torso was laid out in the back face down. The responding officer testified that, based upon Tucker's positioning, it appeared as if he was trying

3

to crawl into the backseat of the car. In total, Brown fired nine shots into the vehicle; seven bullets struck Tucker and one hit Boggs. Tucker died at the scene of multiple gunshot wounds; Boggs was taken to the hospital for treatment of an abdominal wound, which was either caused by a bullet or a piece of flying glass.

During their investigation, law enforcement recovered a loaded Charter Arms .38 caliber pistol from underneath the driver's side floor mat of Tucker's car. The pistol had not been fired. They also located a tire iron on the center console. Nine .40 caliber shell casings were also recovered from the scene, and subsequent testing determined that all the shots were fired from a Smith & Wesson .40 caliber handgun. Officers learned that, prior to the shooting, Brown's brother bought a .40 caliber Smith & Wesson at a pawn shop. The evidence at trial established that Brown frequently visited his brother's home and knew that his brother had recently purchased a pistol. When officers searched the brother's home, the weapon was missing.

Brown's car was found abandoned in a wooded area the day after the shooting. A couple of days later, Brown asked an acquaintance for a ride to an apartment complex where one of his friends resided. When the acquaintance

4

arrived, Brown was wearing a women's wig, a jacket, and sweat pants. During the ride, Brown stated that he regretted what had occurred; he was arrested upon his arrival at the complex.

At trial, the State adduced other acts evidence wherein Brown pled guilty to four counts of aggravated assault for being the gunman in two separate shootings in late 2005. In support of Brown's charges for possession of a firearm by a convicted felon (count 7) and felony murder predicated on the same (count 4), the State presented a certified copy of Brown's prior convictions for false imprisonment and statutory rape.

Brown argues that his convictions for malice murder, felony murder, and aggravated assault should be reversed because the State did not prove he did not act in self-defense beyond a reasonable doubt. We disagree.

As an initial matter, Brown's felony murder charges were vacated by operation of law and, therefore, are not before this Court for review. Regarding his malice murder and aggravated assault convictions, when evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See

Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "'This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.'" (Citation omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013). "Likewise, the issues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." Shaw v. State, 292 Ga. 871, 872 (742 SE2d 707) (2013). Based on the foregoing, we find that the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Brown was guilty of the crimes for which he was convicted.

2. Prior to trial, pursuant to OCGA § 24-4-404 (b), the State filed a notice of intent to introduce Brown's 2006 guilty plea to four counts of aggravated assault. At a pretrial hearing on the notice, the State showed that the offenses took place in late 2005 after Brown had gotten into a verbal argument at a night club. The next day, Brown obtained a weapon and, while driving through a neighborhood, fired multiple shots at two men he believed to be involved in the altercation. Later that day, Brown once again fired his weapon

6

numerous times at individuals he believed to be involved in the prior verbal argument, though this time he shot at them as they approached him in a vehicle. Brown fled after both of the 2005 shootings.

The State requested that this other acts evidence be admitted at Brown's trial in order to establish motive, intent, plan, identity, and absence of mistake or accident. The trial court admitted the evidence for the purposes of demonstrating Brown's intent, absence of mistake or accident, and plan, after concluding pursuant to OCGA § 24-4-403 that the probative value of the other acts evidence was not substantially outweighed by undue prejudice. Brown asserts that the admission of this evidence at trial was error. We agree.

This Court has adopted the Eleventh Circuit's three-part test for determining the admissibility of other acts evidence, requiring that a trial court make findings that,

> (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act. [Cit.] When weighing the probative value of other acts evidence against its prejudicial effect, Georgia courts apply the balancing test set forth in OCGA § 24-4-403, which similarly tracks its federal counterpart. See Fed. R. Evid. 403. On

appeal, a trial court's decision to admit evidence pursuant to OCGA § 24-4-404 (b) is reviewed for a clear abuse of discretion, a review requiring the appellate court to make a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." [Cit.]

(Citations omitted.) Parks v. State, 300 Ga. 303, 305-306 (794 SE2d 623) (2016).

Here, Brown never claimed, nor was there any evidence to suggest, that the shooting was the result of an accident or mistake; thus, whether his actions were the result of an accident or mistake was irrelevant. See OCGA § 24-4-401 (defining relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); Parks, 300 Ga. at 306. Accordingly, because accident or mistake was not at issue, it was error for the trial court to admit the 2006 guilty pleas on that ground pursuant to Rule 404 (b).

Pretermitting whether the other acts evidence relating to intent was relevant as required by the first prong of the Rule 404 (b) analysis given Brown's argument that he committed the shooting, but his actions were justified,

we conclude that the trial court abused its discretion by admitting the 404 (b) evidence because the prior aggravated assaults were clearly more prejudicial than probative.

The second prong of our 404 (b) analysis requires us to weigh the probative value of the other acts evidence against the danger of unfair prejudice. See Olds v. State, 299 Ga. 65, 70 (786 SE2d 633) (2016) ("for evidence of other acts to be admitted under Rule 404 (b), the evidence must pass the test of OCGA § 24-4-403"). Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As the Eleventh Circuit previously explained, "[o]ne of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense," because "the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." (Citation and footnote omitted). United States v. Beechum, 582 F2d 898, 914 (5th Cir. 1978). Indeed, "[t]he 'major

9

function' of Rule 403 is to 'exclude matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" Hood v. State, 299 Ga. 95, 103 (786 SE2d 648) (2016) (quoting United States v. Utter, 97 F3d 509, 514-515 (11th Cir. 1996)). That being said, "the exclusion of evidence under Rule 403 'is an extraordinary remedy which should be used only sparingly.'" (Citations omitted.) Olds, 299 Ga. at 70.

Here, in light of Brown's self-defense claim, the probative value of the other acts evidence was extremely low at best. This is because "probative value depends . . . upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence." Olds, 299 Ga. at 76. By asserting self-defense, Brown did "not deny the intent to inflict injury, but claim[ed] authority for the act under the legal excuse of reasonable fear of immediate serious harm to oneself or another." White v. State, 255 Ga. 731, 733 (342 SE2d 304) (1986). As such, "the only factual issue in the case was whether [self-defense] was the reason for the admitted act." (Punctuation omitted.) Parks, 300 Ga. at 307 (quoting United States v. Commanche, 577 F3d 1261, 1268 (10th Cir. 2009)). "'The fact that [Brown] had committed an assault on

10

another person . . . [nine] years earlier had nothing to do with his reason for . . . shooting the victim,'" and "really has no purpose other than to show appellant's propensity toward violence." Parks, 300 Ga. at 307 (quoting Commanche, 577 F3d at 1268). In fact, as detailed in Division 1 *supra*, the State had other admissible evidence available to rebut Brown's self-defense claim without the introduction of the prior aggravated assaults. See Hood, 299 Ga. at 103 (4).

Because self-defense claims are fact specific to each individual case, and because the other acts evidence filled no narrative holes in the State's presentation of evidence, the "slight cumulative probative value [toward proving intent that] can be ascribed to the [extrinsic evidence] was substantially outweighed by its danger of creating prejudice." United States v. Spletzer, 535 F2d 950, 956 (5th Cir. 1976). See also Beechum, 582 F2d at 914 ("[I]f the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily."). Consequently, the trial court erred in admitting the other acts evidence for the purpose of showing intent.

It was also error for the trial court to admit the other acts evidence as proof

of Brown's plan. The Fifth Circuit has explained that other acts evidence used

to establish a plan is admissible because

> it involves no inference as to the defendant's character; instead his
> conduct is said to be caused by his conscious commitment to a
> course of conduct of which the charged crime is only a part. The
> other crime is admitted to show this larger goal rather than to show
> defendant's propensity to commit crimes.

United States v. Krezdorn, 639 F2d 1327, 1331 (5th Cir. 1981)[2] (quoting 22

Charles Alan Wright & Kenneth A. Graham, Jr., Federal Practice & Procedure:

Evidence § 5244, p. 500 (1978)).

In order for other acts evidence to be admitted for the purposes of

establishing a plan, the evidence should "logically raise[] an inference that the

defendant was engaged in a larger, more comprehensive plan. The existence of

a plan then tends to prove that the defendant committed the charged crime, since

commission of that crime would lead to the completion of the overall plan." Id.

Other acts evidence may also be considered part of a common plan "[i]f the

uncharged offense is 'so linked together in point of time and circumstances with

---

[2] In Bonner v. Pritchard, 661 F2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

the crime charged that one cannot be fully shown without proving the other . . . .'" (Citations omitted.) Id.

Here, Brown's 2006 convictions of aggravated assault did not tend to establish a larger goal, nor were they so connected with the crime charged that the murder could not be fully shown without proving the prior assaults. Finally, they were not relevant to the ultimate issue in the case – i.e., whether he acted in self-defense. Instead, the other acts evidence primarily established one thing – Brown's propensity toward violence, which the State seemed to acknowledge at the pretrial hearing by stating that the purpose of these convictions was to show Brown's propensity to respond to verbal altercations by "using a firearm, shooting at folks when he's not in an immediate danger at the time." Because Brown's prior aggravated assault convictions did not show that he was engaged in a larger plan or scheme, the trial court erred in admitting the 2006 convictions as Rule 404 (b) evidence establishing a plan.

Since the admission of this evidence pursuant to OCGA § 24-4-404 (b) was erroneous, we must review the record de novo to determine whether the trial court's error was harmless. Smith v. State, 299 Ga. 424 (2) (d) (788 SE2d 433)

13

(2016). "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (Citation omitted.) Timmons v. State, 302 Ga. 464, 470 (807 SE2d 363) (2017). "In doing so, we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case." Boothe v. State, 293 Ga. 285, 289 (745 SE2d 594) (2013).

Here, the evidence underlying Brown's guilt is not overwhelming. Though there is no dispute that Brown and Tucker were engaged in an ongoing altercation, and that Brown eventually shot Tucker, there were no eyewitnesses to the shooting other than Brown. Moreover, while the forensic evidence indicates Brown took steps toward and shot into the car multiple times, there is ample conflicting evidence concerning whether he acted in self-defense. In addition to the facts recounted above, the record also includes evidence that: Tucker became "very upset" and "heated" after the pair's initial confrontation outside the house and, because of this, followed Brown down the hill and continued to provoke him; Boggs believed Brown was attempting to place distance between himself and Tucker immediately prior to the shooting; Tucker

14

had a gun in his possession during the encounter; Brown and other witnesses retreated back up the hill, fearing that Tucker had pulled a weapon from his trunk in order to shoot Brown; Brown told nearby witnesses he believed Tucker was going to pull a gun on him prior to getting his own weapon; Tucker knew of, and could have taken, a different route to leave the neighborhood, but chose to follow Brown up the hill; and Tucker's car was still in motion immediately prior to the shooting.

In light of the entirety of the evidence presented at trial, we cannot say that it is highly probable that the error did not contribute to the verdict. Accordingly, we must reverse Brown's convictions.

3. Because we reverse Brown's convictions for the erroneous admission of 404 (b) evidence, we do not address his remaining claim of trial court error or his claims of ineffective assistance of counsel.

Judgment reversed. All the Justices concur.

Decided February 5, 2018 — Reconsideration denied March 5, 2018.

Murder. Clarke Superior Court. Before Judge Haggard.

David G. Williams, Jr., for appellant.

Kenneth W. Mauldin, District Attorney, David T. Lock, Brian V. Patterson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.