**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 22, 2018**

# In the Court of Appeals of Georgia

A18A1105. HOUSEWORTH v. THE STATE.                    DO-037 C

DOYLE, Presiding Judge.

Santana R. Houseworth was charged with driving under the influence to the extent it was less safe to drive ("DUI less-safe"),[1] hit-and-run,[2] and two counts of first degree vehicular homicide (predicated on felony hit-and-run and DUI less-safe).[3] A jury acquitted her of vehicular homicide based on DUI less-safe (Count 1), and she was convicted on the remaining three counts and sentenced to serve 15 years in custody.[4] Houseworth appeals, arguing that the evidence was insufficient to sustain

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-270 (b).

[3] OCGA §§ 40-6-393 (a) & (b).

[4] Houseworth's conviction for hit-and-run (Count 3) merged with vehicular homicide based on hit-and-run (Count 2).

her conviction for vehicular homicide based on hit-and-run and that the trial court erred by admitting evidence of her subsequent DUI arrest. For the reasons that follow, we find the evidence sufficient, but reverse her convictions because the trial court erred by admitting evidence of the subsequent act.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer entitled to the presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.[5]

So viewed, the record shows that on the night of April 3, 2015, Houseworth, Bobby Gleaton, Jr. (her boyfriend), and several friends went to a nightclub in DeKalb County, where the group ate food and drank alcohol. According to one witness, Houseworth consumed "three or four shots and a couple [of] cups of blue MF[, an alcoholic mixed drink]." The group was asked to leave the bar after one of Houseworth's friends got into a disagreement with another patron. Gleaton,

---

[5] (Citations and punctuation omitted.) *Dickson v. State*, 339 Ga. App. 500, 501 (1) (793 SE2d 663) (2016), quoting *Byrd v. State*, 325 Ga. App. 24 (752 SE2d 84) (2013), *Newsome v. State*, 324 Ga. App. 665 (751 SE2d 474) (2013).

2

Houseworth, and Houseworth's friend, Cierra St. Hubert-Upshaw, left in Houseworth's car – a white 2003 Honda Accord – with Gleaton driving, intending to meet the others at Gleaton's house.

While en route, Gleaton and Houseworth argued. Gleaton stopped the car in an office park located on a four-lane divided highway and got out, telling the women that he would "get hi[m]self home." The women exited the car and tried to convince Gleaton to return to the car, but he refused. Gleaton called his friend, Deion Willams, and asked him to pick him up at a condominium complex, which was located on the same side of the highway as the office park where the group was parked and connected to it with a sidewalk.

When Houseworth and St. Hubert-Upshaw returned to the car, it had started to rain. Houseworth, who was driving, turned eastbound on the highway shortly before making a U-turn to go westbound towards an interstate highway. St. Hubert-Upshaw estimated that Houseworth was going approximately 45 miles per hour, which was the speed limit. As the car proceeded towards the interstate, the women saw something in the road; according to St. Hubert-Upshaw, the women could not initially determine what it was, asking each other if it was "like a deer or something." St. Hubert-Upshaw testified that as they got closer to the object, they realized it was

3

Gleaton, and Houseworth swerved to avoid him, jerking the steering wheel to the left and stopping the car in the median. St. Hubert-Upshaw, who was in the front passenger seat, hit her head on the dashboard, and the windshield cracked.

As soon as she regained control of the car, Houseworth drove a short distance to the parking lot of a nearby restaurant. The women exited the car, and St. Hubert-Upshaw noticed that the bumper on Houseworth's car was hanging off, the windshield was cracked, and there was a dent in the roof. Houseworth called Gleaton's parents and Williams, and she angrily told them that Bobby had "messed up her car." Gleaton's parents and Williams met her in the restaurant parking lot, where Houseworth told them that Gleaton had thrown something at her car or punched it. Williams and Gleaton's parents testified that Houseworth appeared to be intoxicated, and they all observed the significant damage to her car.

Meanwhile, between 1:45 and 2:30 a.m. that same night, Jessica Johnson observed an object lying in the road on the highway, partially in the median. Johnson applied her brakes and tried to swerve around the object, but she was unable to avoid running over it. Johnson stopped her vehicle and immediately called 911 when she realized she had run over a person, later identified as Gleaton. While she waited for police to arrive, Johnson observed several other vehicles run over the body.

4

When an officer arrived on the scene, Gleaton was "in the roadway injured very badly," and he stopped breathing shortly thereafter. Emergency personnel arrived and attempted to render aid, but they were unable to revive Gleaton. A detective arrived shortly thereafter and observed track marks on the roadway, a black vehicle part later identified as a part from the inner wheel well of a vehicle, and a broken piece of a white bumper cover with a label indicating that it fit a 2003 to a 2006 Honda Accord.[6] Although he was unable to conduct an accident reconstruction based on wet weather conditions and the fact that Gleaton had been struck by multiple vehicles, the detective later determined that the damage to Houseworth's vehicle was consistent with "a vehicle striking a pedestrian."

Meanwhile, Houseworth and St. Hubert-Upshaw left and went to Clayton State College with friends to retrieve Houseworth's phone. Houseworth returned to the restaurant, and at 6:36 a.m. the following morning, she called 911 from the parking lot and reported a single-vehicle accident with property damage. An officer, unaware of Gleaton's death, responded to the restaurant, and he observed that Houseworth's white 2003 Honda Accord was "very heavily damaged," noting that the windshield was caved in. Houseworth appeared to be "kind out of it," her hair was in disarray,

---

[6] There was no white Honda at the scene when police responded.

5

and she wasn't wearing much clothing. Houseworth told the officer that "she was driving down the highway earlier in the middle of the night[,] and she struck something. She wasn't sure if it was a deer or whatever, an object in the road."

At 10:06 a.m., Houseworth sent Gleaton's mother a text that said, "[T]here are no words I can say for forgiveness, but on my own life I did not see this coming[,] and I promise you I had no intentions. . . . I know sorry can't fix anything but I'm sorry. . . . I'm on begging knees, I swear it wasn't intentional."

Houseworth was charged with two counts of first degree vehicular homicide, hit-and-run, and DUI less-safe.

At trial, the medical examiner testified that Gleaton suffered a number of injuries, including lacerations, contusions, compound fractures in both legs, a linear skull fracture, and blunt force injuries to his face. He further testified that

> [I]t would be my opinion that the head injuries [caused by the first vehicle striking Gleaton], in and of themselves are lethal, the skull fracture and the brain injuries to the brain itself. And it would be my opinion that that particular injury was, in my opinion, caused by an impact either against the first vehicle that struck him . . . and could have been caused either by an impact against part of the vehicle or, you know, the tertiary impact when he was thrown off that vehicle and onto the road and impacting his head then.

6

According to the medical examiner, some of Gleaton's injuries were sustained while he was walking or standing upright, and those injuries incapacitated him, rendering him immobile in the roadway, where he was struck by other vehicles that also left injury patterns. On cross-examination, however, the medical examiner conceded that it was possible that Gleaton was still standing after the first car struck him. The medical examiner also testified that blood tests performed on Gleaton indicated the presence of "a fairly high level" of marijuana, a "very small amount" of Xanax, a "fairly high amount . . . high therapeutic or slightly above" level of pseudoephedrine/ephedrine, and a low-to-therapeutic amount of Benadryl; another doctor testified that Gleaton's blood alcohol level was 0.109.

At the conclusion of the trial, the jury acquitted Houseworth of vehicular homicide based on the predicate offense of DUI and found her guilty of the remaining three counts. This appeal followed.

1. Houseworth argues that the evidence is insufficient to sustain her conviction for vehicular homicide predicated on hit-and-run because Gleaton's conduct was the superseding, proximate cause of the accident that caused his death. We disagree.

(a) OCGA § 40-6-393 (b) provides: [a]ny person who, without malice aforethought, causes the death of another person through the violation of . . .

7

subsection (b) of Code Section 40-6-270 [felony hit-and-run] commits the offense of homicide by vehicle in the first degree."

Count 2 charged that Houseworth violated OCGA § 40-6-393 (b) by:

> while driving a motor vehicle . . . without malice aforethought, cause[d] an accident which caused the death of Bobby Lee Gleaton, Jr., a human being, through a violation of OCGA § 40-6-270 (b), [h]it and [r]un, in that she struck [Gleaton] with the aforementioned motor vehicle, and did knowingly fail to immediately stop her vehicle at the scene of the accident and return to the scene of the accident and render reasonable assistance to said victim. . . .

The trial court charged the jury that the State bore the burden of proving, beyond a reasonable doubt, that Houseworth was "guilty of the offenses charged" and that "[n]o person shall be convicted of any crime unless or until each element of the crime as charged is proven beyond a reasonable doubt. The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." The court also properly charged the jury as to the elements of vehicular homicide based on the predicate act of hit-and-run, and it gave the jury the following pattern jury charge on leaving the scene/hit-and-run, which charge addressed causation:

8

It is unlawful for any person to knowingly fail to stop and comply with the requirements previously stated where the accident is the proximate cause of death or serious bodily injury. Proximate cause is that which in the natural and continuous sequence unbroken by other causes produces an event and without which the event would not have occurred. Proximate cause is that which is the nearest in the order of responsible causes as distinguished from remote and that which stands last in causation, not necessarily in time or place but in causal relation.[7]

"[I]n cases of conflicting evidence over causation, the question is one for the jury to resolve."[8]

Here, the testimony about Houseworth's alcohol consumption before the accident and her appearance and actions soon after the accident, coupled with the evidence of the damage to her, debris left at the scene, and St. Hubert-Upshaw's testimony about Houseworth's unsuccessful attempt to avoid striking Gleaton by swerving, entitled the jury to conclude that Houseworth caused the accident, while driving under the influence of alcohol to the extent that it was less safe, striking Gleaton with her car, and leaving the scene without rendering aid, which resulted in

---

[7] See Suggested Pattern Jury Instructions Vol. II: Criminal Cases (4th ed.), § 2.86.22.

[8] *Michael v. State*, 335 Ga. App. 579, 584 (1) (782 SE2d 479) (2016).

9

Gleaton's serious injury and death. The jury also could reasonably infer from her text to Gleaton's mother the morning after the accident that Houseworth was conscious of her own guilt.[9]

(b) Houseworth also contends that the circumstantial evidence of causation failed to exclude all reasonable hypotheses of her guilt.[10] This

> argument is without merit because the reasonable hypothesis rule applies only in the narrow context where all of the evidence against the accused was circumstantial. Here, there was direct evidence in the form of eyewitness testimony[, including St. Hubert-Upshaw, Gleaton's parents, and Williams,] and [Houseworth's statements in her text to Gleaton's mother]. The reasonable hypothesis rule therefore has no application in this case.[11]

(c) Finally, contrary to Houseworth's argument on appeal, the fact that the jury acquitted her of vehicular homicide predicated on DUI less-safe does not mean that the State had to use conduct independent of DUI to prove that she caused the accident. An acquittal on one charge does not affect the sufficiency of the evidence

---

[9] Id. at 585 (1).

[10] See OCGA § 24-14-6.

[11] (Citations omitted.) *Michael*, 335 Ga. App. at 585 (1).

10

as to another charge, even if the conviction is a compound offense, and the acquittal was for a predicate offense.[12]

> In light of the abolition of the inconsistent verdict rule in criminal cases, the issue is not whether an acquittal on one charge would logically necessitate acquittal on another charge on which the jury convicted the defendant; rather the sole question is whether the evidence viewed in favor of the conviction was sufficient to support the guilty verdict.[13]

Given the evidence in this case, the jury was authorized to conclude that Houseworth was guilty of first-degree vehicular homicide predicated on hit-and-run.

2. Houseworth also contends that the trial court erred by admitting evidence of her subsequent, unresolved DUI less-safe arrest, arguing that it was irrelevant, lacked probative value, and was unfairly prejudicial.

Prior to trial, the State filed a notice of intent to present evidence of Houseworth's May 21, 2016 arrest for DUI less-safe, seeking to introduce it to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

---

[12] See *Tanksley v. State*, 281 Ga. App. 61, 62 (1) (635 SE2d 353) (2006).

[13] (Punctuation omitted.) Id., quoting *Kimble v. State*, 236 Ga. App. 391, 395 (1) (512 SE2d 306) (1999). See also *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986) (abolishing the inconsistent verdict rule in criminal cases), citing *United States v. Powell*, 469 U. S. 57, 67 (105 SC 471, 83 LE2d 461) (1984).

absence of mistake or accident. . . ." The trial court heard evidence and oral argument from the parties on the fourth day of trial.[14] The State advised that it sought to introduce the evidence to show Houseworth's "intent to drive under the influence of alcohol" and to show that her actions were not an accident; Houseworth objected, arguing that the subsequent acts were neither relevant nor probative, and they were unfairly prejudicial.

After considering the proffer and the arguments of counsel, the trial court admitted the evidence "for the purpose of demonstrating intent." The court did not elaborate on its ruling, failing to indicate whether it had weighed the prejudicial impact against the probative value of the evidence. The court did instruct the jury immediately before its admission that the evidence was to be considered "for the sole issue or limited purpose of showing intent." And during its final instructions to the jury, the trial court charged:

> Before you may consider — before you may consider of the subsequent
> DUI alleged committed — allegedly committed by the defendant for the
> limited purpose of showing intent, you must first determine whether it

---

[14] According to the State's appellate brief, in an order dated August 23, 2017, the court granted the State's motion to introduce the evidence of Houseworth's subsequent DUI. As the State points out, however, that order was not included in the record on appeal.

is more likely than not that the accused committed the subsequent DUI. If so, you must then determine whether the subsequent DUI shares any light on the issue of intent for the crimes charged in the indictment in this trial. Remember to keep in mind the limited use and prohibited use of this evidence.

Following the trial court's ruling admitting the evidence, the State presented testimony from a police officer who responded to a single-car accident in Atlanta at 3:30 a.m. on May 21, 2016. The officer observed Houseworth's Honda Accord, which had struck an unoccupied, abandoned house, resulting in damage to the house and extensive damage to the car. Houseworth — the driver — and her passenger initially walked away from the scene, but paramedics stopped Houseworth and transported her to the hospital, where she was interviewed by another officer. Houseworth, who was wearing a neck brace, admitted that she had been drinking at the U-Bar – the same bar she and Gleaton visited the night of his death – before driving and losing control of her car. After noticing an odor of alcohol and observing Houseworth's glossy, glassy eyes, the officer arrested her. Houseworth refused to submit to a State-administered chemical test, and she was charged with DUI less-safe.

OCGA § 24-4-404 (b) ("Rule 404 (b)") provides in relevant part:

13

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

To admit evidence of other acts,

[t]he trial court must find that: (1) the other acts evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"), and (3) there is sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the acts.[15]

Relevant evidence admissible under Rule 404 (b) may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[16] "This balancing test is committed principally to the discretion of the trial courts[,] and

---

[15] (Punctuation omitted.) *State v. Atkins*, ___ Ga. ___, ____ (2) (Case No. S18A0770, decided Sept. 10, 2018), quoting *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017) ("*Jones IV*").

[16] OCGA § 24-4-403.

14

exclusion of evidence under the test is an extraordinary remedy which should be used only sparingly."[17]

Here, the State sought to admit the evidence to show Houseworth's "intent to drive under the influence of alcohol" and to show that her actions were not an accident, and the trial court admitted the evidence "for the purpose of demonstrating intent."

> Rule 404 (b) explicitly recognizes the relevance of other acts evidence offered for a permissible purpose and, at the same time, prohibits the admission of such evidence when it is offered solely for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime. Rule 404 (b), therefore, is, on its face, an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence.[18]

---

[17] (Punctuation omitted.) *Jones IV*, 301 Ga. at 546 (1), quoting *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016).

[18] *State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015) ("*Jones II*").

Intent is a proper purpose for introducing evidence of similar acts.[19] And the Supreme Court of Georgia held in *Jones II* that DUI less-safe is a general intent crime, and the State therefore

> had the burden of proving beyond a reasonable doubt [the defendant's] intent . . . to drive . . . under the influence of alcohol . . . to the extent [s]he was a less safe driver. Intent, therefore, was a material issue in the State's prosecution[,] and because the same state of mind was required for committing the prior act and the charged crimes, i.e., the general intent to drive while under the influence of alcohol, evidence of [the defendant's ] prior [DUI] conviction was relevant under Rule 404 (b) to show [the defendant's] intent [with regard to the charged crime].[20]

Neverthless, even assuming that Houseworth's subsequent arrest for DUI was relevant to show intent, the record does not demonstrate that the evidence of her subsequent DUI arrest was properly admitted.

The Supreme Court of Georgia has explained that:

the probative value of evidence derives in large part from the extent to which the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value.

---

[19] See OCGA § 24-4-404 (b).

[20] (Punctuation and citation omitted.) *Jones II*, 297 Ga. at 160-161 (2).

And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal value of the evidence in question. And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.[21]

When conducting the Rule 403 balancing test,

[a]n appellate court will examine whether the trial court properly considered all the circumstances surrounding the extrinsic act evidence, including the similarities between the charged act and the extrinsic act, the remoteness in time between the charged act and the extrinsic act, and the prosecution's need for the extrinsic act evidence.[22]

Here, the temporal span of thirteen months "is not too remote for the probative value of the extrinsic act to be impacted in a significant way."[23] Therefore, a

---

[21] (Citation and emphasis omitted.) *Olds*, 299 Ga. at 75-76 (2).

[22] *Jones IV*, 301 Ga. at 548 (2), citing *United States v. Perez*, 443 F3d 772, 780 (II) (11th Cir. 2006); *Bradshaw v. State*, 296 Ga. 650, 657-658 (3) (769 SE2d 892) (2015).

[23] *Jones IV*, 301 Ga. at 548 (2).

17

determination of the admissibility of the similar act focuses on the similarities between the two events and the State's need for the subsequent DUI arrest to demonstrate intent.

While both events involved DUI after Houseworth consumed alcohol at the same bar, they are not identical. In May 2016, Houseworth drove her car from the bar and struck a building, and there is no evidence that the collision resulted from anything other than her diminished capacity. In the charged crime, she drove her car after Gleaton refused to drive anymore, and she struck him when he later entered the roadway — in a location other than where she left him and had no reason to expect him to be — in the rain. Accordingly, the "similarities" between the two crimes are a relatively neutral factor in the balancing test.

More importantly, the probative value of her subsequent DUI arrest is minimal.

> [W]hether the charged crime is one of general intent is one of the factors, an important one, the trial court may consider when assessing the prosecutorial need for the extrinsic act evidence in question. Logically, if the State's threshold to prove intent as an element of a crime is relatively low, as it likely is when the charged crime is one of general intent, then the probative value of the extrinsic act evidence would necessarily be minimal.[24]

---

[24] Id.

At trial, Houseworth's attorney specifically conceded during opening and closing arguments that Houseworth consumed alcohol before she drove. Such a concession, notwithstanding her failure to admit that she was under the influence to the extent that she was less-safe, diminishes the probative value of her subsequent DUI arrest.[25] "This is because probative value depends upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence."[26] Given Houseworth's concession during argument, coupled with the undisputed evidence that she had consumed alcohol at the bar before the accident and the fact that DUI less-safe is a general intent crime, "the probative value of the [subsequent] DUI [arrest] to show intent . . . was very low."[27]

---

[25] See, e.g., *Brown v. State*, 303 Ga. 158, 161-162 (2) (810 SE2d 145) (2018) (holding that the defendant's prior commission of assault on another person had "extremely low" probative value at his trial for murder and related offenses because he admitted the intent to injure by asserting self-defense).

[26] (Punctuation omitted.) Id. at 162 (2), quoting *Olds*, 299 Ga. at 76 (2).

[27] *Jones IV*, 301 Ga. at 549 (2).

Having determined the extremely low probative value of Houseworth's subsequent DUI arrest, we must now weigh that against the danger of unfair prejudice.[28] As the Supreme Court of Georgia has explained,

> one of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense, because the jury may feel that the defendant should be punished for that activity even if [she] is not guilty of the offense charged. Indeed, the major function of Rule 403 is to exclude matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.[29]

And "[a]nytime a prior crime is admitted into evidence, there is a prejudicial effect. Here, because the probative value of [Houseworth's subsequent] DUI [arrest] was minimal given all the attendant circumstances, the danger of interjecting *unfair* prejudice was a greater risk."[30] This danger is evidenced by "the manner in which the

---

[28] See *Brown*, 303 Ga. at 162 (2), citing *Olds*, 299 Ga. at 70 (2).

[29] (Citation and punctuation omitted.) *Brown*, 303 Ga. at 162 (2), quoting *Hood v. State,* 299 Ga. 95, 103 (4) (786 SE2d 648) (2016), *United States v. Beechum*, 582 F2d 898, 914 (III) (c) (5th Cir. 1978). In *Bonner v. City of Prichard*, 661 F2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to September 30, 1981.

[30] (Citations and footnote omitted; emphasis in original.) *Jones IV*, 301 Ga. at 549-550 (2), citing *United States v. Sterling*, 738 F3d 228, 238-239 (III) (B) (11th Cir. 2013) & *United States v. Johnson*, 27 F3d 1186, 1193 (II) (B) (6th Cir. 1994).

20

prosecutor actually used the extrinsic act evidence at trial."[31] During closing argument, although the State maintained that the evidence of Houseworth's subsequent DUI arrest was important because it "goes to intent," the prosecutor went on to explain that "[i]t shows you that she consumed alcohol and intends to drive. . . ." This statement impermissibly implies course of conduct and propensity, not intent. Neither course of conduct nor propensity are listed as proper purposes to admit Rule 404 (b) evidence[32]; in fact, "Rule 404 (b) prohibits the admission of [similar act] evidence when it is offered solely for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime."[33]

Therefore, instead of going to the issue of intent, the admission of Houseworth's subsequent DUI arrest "creat[ed] the potential that the jury would render a decision predicated on [her propensity to drink and drive] in addition to the stigma already associated with a [similar criminal act]."[34] Accordingly, we conclude

---

[31] *Jones IV*, 301 Ga. at 550 (2).

[32] The new Evidence Code specifically omitted course of conduct as a permissible purpose for other acts evidence. See *Thompson v. State*, 302 Ga. 533, 538 (III) (A) (807 SE2d 899) (2017).

[33] (Punctuation and emphasis omitted.) *Jones II*, 297 Ga. at 159 (2).

[34] *Jones IV*, 301 Ga. at 550 (2).

21

that the trial court abused its discretion by admitting evidence of Houseworth's subsequent DUI arrest "because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice."[35]

(b) Having concluded that the admission of the similar act evidence was erroneous,

> we must review the record de novo to determine whether the trial court's error was harmless. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In doing so, we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case.[36]

So viewed, the evidence of Houseworth's guilt for vehicular homicide, while sufficient to support her conviction, was not overwhelming. Again, the State had to prove that Houseworth, without malice aforethought, caused the accident which caused Gleaton's death, through a violation of the hit-and-run statute.[37] The evidence at trial showed that Gleaton stopped and exited Houseworth's car on one side of the

---

[35] Id.

[36] (Citations and punctuation omitted.) *Brown*, 303 Ga. at 164 (2).

[37] See OCGA 40-6-393 (b).

four-lane divided highway, and then, in the dark and rain, crossed the highway and the median and was in the road on the other side of the highway — where Houseworth had no reason to expect him to be — when Houseworth's vehicle made contact with him. Under these circumstances, there was not overwhelming evidence that Houseworth caused the accident. Thus, "we cannot say that it is highly probable that the error did not contribute to the verdict. Accordingly, we must reverse [Houseworth's] convictions."[38] We note, however, that because there was sufficient evidence to sustain the jury's guilty verdict, "double jeopardy therefore would not bar a retrial in this instance."[39]

*Judgment reversed. Dillard, C. J., and Mercier, J., concur.*

---

[38] *Brown*, 303 Ga. at 165 (2)

[39] *Thompson*, 302 Ga. at 545 (V). Compare *Jones IV*, 301 Ga. at 550-551 (3) (holding that error in admitting Rule 404 (b) evidence was harmless and did not require reversal of conviction for DUI per se in light of evidence that the defendant's blood alcohol concentration was substantially in excess of the legal limit).