**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: February 18, 2025

S24A1301. THE STATE v. FLOWERS.

LaGrua, Justice.

Napoleon Flowers was indicted for murder, aggravated assault, cruelty to children, and related charges, for firing multiple shots at Jim Johnson, in the vicinity of other adults and a child. Johnson was fatally wounded.[1] Flowers claimed self-defense.

Before trial, the State moved to admit[2] evidence of six other acts which Flowers allegedly committed, pursuant to OCGA § 24-4-

---

[1] The shooting occurred on May 14, 2023. On June 5, 2023, a Dodge County grand jury indicted Flowers for the malice murder of Johnson (Count 1); the felony murder of Johnson (Count 2); the aggravated assault of Johnson (Count 3); the aggravated battery of Johnson (Count 4); the aggravated assault of Tonya Driver (Count 5); the aggravated assault of Jermaine Deckard (Count 6); the aggravated assault of minor Z.Y. (Count 7); cruelty to children premised on firing shots toward the house where minor Z.Y. was located (Count 8); and five counts of possession of a firearm during the commission of a felony (Counts 9- 13).

[2] The State filed a "Notice of Prosecution's Intent to Present Evidence of Other Crimes, Wrongs, or Acts," which the parties and the trial court treated as a motion.

404 (b)[3] ("Rule 404 (b)"). After a hearing, the trial court admitted the evidence of one of those acts as intrinsic to the shooting,[4] but denied admission of evidence related to the other five acts. The State appeals the exclusion of those five acts pursuant to OCGA § 5-7-1 (a) (5), which allows the State to appeal the pretrial exclusion of evidence at least 30 days prior to trial.[5]

---

[3] That statute provides that

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA § 24-4-404 (b).

[4] According to the State's proffer, on May 12, 2023, two days before Flowers shot Johnson, Flowers told Driver that he would shoot her and Johnson in the face, and that Flowers would disappear, and that nothing would happen to him. The State does not raise this act on appeal because the trial court admitted it as intrinsic evidence, a ruling with which both parties agree.

[5] That statute provides, in pertinent part, that the State may appeal

[f]rom an order . . . excluding . . . evidence to be used by the [S]tate at trial on any motion filed by the [S]tate . . . at least 30 days prior to trial and ruled on prior to the impaneling of a jury . . . if: (A) Notwithstanding the provisions of Code Section 5-6-38, the notice of appeal filed pursuant to this paragraph is filed within two days of such order . . . ; and (B) The prosecuting attorney certifies to the trial court that such appeal is not taken for purpose of delay and that the evidence is a substantial proof of a material fact in

2

Because the trial court did not abuse its discretion in excluding all five acts, we affirm.

According to the parties' pretrial proffers, on May 14, 2023, Johnson was at his girlfriend Tonya Driver's home. Driver's brother, Jermaine Deckard, and her minor son, Z.Y., were also there. Flowers was next door at his grandmother's house with several of his own family members. The two families had ongoing problems resulting in police intervention in the past. At some point, both groups were outside when Flowers and Johnson began arguing. Ultimately, Flowers fired multiple rounds from his 9mm Taurus handgun at Johnson, with Driver and Deckard nearby, and in the direction of Driver's house, where minor Z.Y. was. One of the bullets struck Johnson in the head, causing his death. Flowers fled the scene in a car which Flowers's cousin drove. Law enforcement stopped the car and took Flowers into custody, along with the 9mm Taurus handgun

---

the proceeding[.]

OCGA § 5-7-1 (a) (5). See also *State v. Andrade*, 298 Ga. 464, 467 (782 SE2d 665) (2016) (noting that subsection OCGA § 5-7-1 (a) (5) governs evidence excluded "pursuant to general rules of evidence") (cleaned up).

which Flowers later admitted he used in the shooting.

Flowers waived his *Miranda*[6] rights and gave a recorded statement to the GBI on the day of the shooting. Flowers said that he was in his grandmother's carport when Johnson confronted him about a prior incident in their ongoing feud.[7] Flowers said that Johnson was "talking crazy." Johnson allegedly accused Flowers of "grabbing a gun," which Flowers denied, whereupon, according to Flowers, Johnson told Driver to "go grab his shotgun."

Flowers said that as Driver went back to her house to get the shotgun, Flowers "grabbed" his own gun, which was "with [him] when he was drying [his] clothes in the laundry room." Flowers said that Driver came back with a shotgun and as Johnson was "reaching for the shotgun" and had "grabbed it with one hand," "gripped it with two hands," and started "facing in [Flowers's] direction like he had intentions," Flowers "started shooting."

Flowers admitted to shooting at Johnson 13 times, only

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[7] Flowers said that the day before the shooting, Johnson threatened to shoot Flowers's cousin and hurt other family members.

stopping because he ran out of ammunition. Flowers said that, after he fired eight of those shots, Johnson "turned his back . . . like he was trying to get back in the house," whereupon Flowers fired five more shots. Flowers said he fired so many times because he "thought [he] was missing" Johnson.

Flowers said that after he shot Johnson, Johnson and Driver went back into Driver's house. Flowers's cousin drove Flowers from the scene. Law enforcement pulled them over and took Flowers into custody, along with the gun that Flowers used, which Flowers said he had "in a bag" with some of his other belongings.

1. By agreement with Flowers and permission of the trial court, the State proffered the five other acts at the pretrial motion hearing and in its briefs, as follows:

According to the State's proffer, on July 12, 2021, Flowers and John Patillo were in a verbal argument resulting in Flowers walking up to Patillo's vehicle and striking him. ("Patillo act"). The State argued that this act proves (1) intent and (2) Flowers's "propensity" to initiate and continue violent encounters.

5

The second act, according to the State's proffer, occurred on May 7, 2022. Flowers purportedly argued with his mother, Niquana Powers, about whether to turn the air conditioner on or not, resulting in Flowers striking his mother in the head. ("Powers act"). The State argued that this act proves (1) intent and (2) Flowers's "propensity" for initiating and continuing violent encounters.

The third act, according to the State's proffer, occurred on or about May 17, 2022, when Elijah Orange allegedly took Flowers's 9mm Taurus handgun from Flowers's car. The next day, Flowers purportedly went to the house where Orange lived and confronted him, resulting in a physical altercation. ("Orange act"). The State argued that this act proves (1) intent; (2) Flowers's "propensity" for initiating and continuing violent encounters; (3) Flowers's "propensity" to resort to threat or use of firearms with little or no provocation; and (4) absence of mistake or accident based on knowledge and possession of firearms.

The fourth act, according to the State's proffer, occurred on April 7, 2023, when James Burney and others were playing with toy

"splatter ball" guns near where Flowers sat in his parked car. Burney apparently shot Flowers's car with the toy gun. The State alleged that when Burney approached the passenger side of Flowers's car and leaned over to look inside, Flowers fired his 9mm Taurus several times at Burney, a fact which, according to the State, Flowers later admitted. ("Burney act"). The State argued that this act proves (1) intent; (2) Flowers's "propensity" for initiating and continuing violent encounters; (3) Flowers's "propensity" to resort to threat or use of firearms with little or no provocation; and (4) absence of accident or mistake based on knowledge and possession of firearms.

The fifth act, according to the State's proffer, occurred on February 12, 2023, when Flowers allegedly fired his 9mm Taurus handgun at Wilcox and Orange's residence while they were inside it. ("Wilcox act"). The State said that police recovered one of the shell casings and later confirmed that it matched the shell casings for the weapon with which Flowers shot Johnson. The State argued that this act proves (1) intent; (2) Flowers's "propensity" for initiating and

continuing violent encounters; (3) Flowers's "propensity" to resort to threat or use of firearms with little or no provocation; (4) absence of mistake or accident based on knowledge and possession of firearms; and (5) identity.

Citing Rule 404 (b), OCGA § 24-4-403 ("Rule 403"),[8] *Brown v. State*, 303 Ga. 158 (810 SE2d 145) (2018), and *Parks v. State*, 300 Ga. 303 (794 SE2d 623) (2016), the trial court concluded that Flowers's sole claim of self-defense precluded use of the five other acts to show "intent, knowledge, absence of mistake or accident, identity, or motive." The trial court further ruled that Georgia law forbids admission of evidence of other acts to prove Flowers's "alleged propensity to resort to threat or use of firearms with little or no provocation," or to prove Flowers's "alleged propensity to respond with violence."

The trial court also found, pursuant to Rule 403, that "the

---

[8] "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

probative value of the [other] acts is diminished by the availability of eyewitness testimony and [Flowers's] recorded statement to law enforcement," to establish what happened when Flowers shot Johnson. The trial court found that the unfair prejudicial impact of the other acts outweighed their limited probative value "because [Flowers] has claimed self-defense, and the introduction of the other acts serves no other purpose than to demonstrate [Flowers's] propensity toward violence."

2. The State's sole contention on appeal is that the trial court abused its discretion in excluding evidence of the five acts pursuant to Rule 404 (b). We review the trial court's ruling for abuse of discretion. See *Hounkpatin v. State*, 313 Ga. 789, 794 (2) (873 SE2d 201) (2022).

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "All relevant evidence shall be admissible," except as otherwise limited by law. OCGA § 24-4-402.

9

Rule 404 (b) establishes one such limitation, providing that evidence of other acts is not admissible "to prove the character of a person in order to show action in conformity therewith," but may be admissible "for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404. Rule 404 (b) "prohibits" the admission of evidence "offered solely for the impermissible purpose of showing a defendant's bad character or propensity to commit a crime." *Fletcher v. State*, 303 Ga. 43, 46 (810 SE2d 101) (2018) (cleaned up). Rule 403 establishes another limitation, providing in pertinent part that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" OCGA § 24-4-403.

Thus, for other acts to be admissible pursuant to Rule 404 (b), the trial court must conclude that

> (1) the other acts evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"), and (3) there is sufficient proof that a jury could find by a preponderance

10

of the evidence that the defendant committed the acts. *Flowers v. State*, 307 Ga. 618, 621 (2) (837 SE2d 824) (2020) (citation omitted).

The exclusion of evidence under Rule 403 is an "extraordinary remedy which should be used only sparingly." *Jones v. State*, 301 Ga. 544, 546 (1) (802 SE2d 234) (2017) (citation omitted).

The State argues that the five other acts are relevant to disprove the defenses of mistake, accident, knowledge, and identity pursuant to Rule 404 (b). But because Flowers has not raised those defenses, nor does the current record suggest them, the trial court did not abuse its discretion in ruling that the other acts were not admissible for those purposes. See *Brown*, 303 Ga. at 161-162 (2) (holding that because the appellant "never claimed, nor was there any evidence to suggest, that the shooting was the result of an accident or mistake . . . whether his actions were the result of an accident or mistake was irrelevant") (citation omitted). See also *Parks*, 300 Ga. at 306-307 (2) (holding that other-act evidence was not relevant to prove knowledge, absence of mistake, accident,

11

identity, or motive where the defendant's sole claim was self-defense).

Thus, the State's only remaining stated justification for admission of the other acts is to prove intent. Pretermitting whether the five other acts were relevant to Flowers's intent and his claim of self-defense, the trial court did not abuse its discretion by excluding those acts on the basis that the danger of undue prejudice substantially outweighed their probative value pursuant to Rule 403.

"Factors to be considered in determining the probative value of other act evidence offered to prove intent include its overall similarity to the charged crime, its temporal remoteness, and the prosecutorial need for it." *Jackson v. State*, 306 Ga. 69, 77 (2) (b) (ii) (829 SE2d 142) (2019) (citation and punctuation omitted).[9]

---

[9] The trial court did not explicitly analyze the element of temporal remoteness, but by concluding that the probative value of the other acts was low, the court implicitly determined that the temporal proximity of the other acts did not significantly increase their probative value. See *White v. State*, 319 Ga. 367, 380 (b) (i) (903 SE2d 891) (2024) (noting the trial court's "implicit conclusion that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence" pursuant to Rule 403).

The trial court did not abuse its discretion in determining that the other acts, as proffered by the State, offered "diminished" probative value, particularly "because [Flowers] has claimed self-defense." As for overall similarity to the charged crime, the Patillo, Powers, and Orange acts appear to be simple batteries, which, as proffered, did not involve any weapon, much less the weapon which Flowers used to shoot Johnson. The Burney and Wilcox acts, as proffered, appear more similar because Flowers purportedly used the same handgun in those acts that he used against Johnson, but in the Burney act, Flowers allegedly shot from inside his own vehicle in apparent response to a "splatter ball" attack, and in the Wilcox act, Flowers purportedly shot at a home for unknown reasons.

Thus, the other acts are different enough from the charged crimes that the trial court did not abuse its discretion by finding that their probative value was "diminished." See *Jackson,* 306 Ga. at 77 (2) (b) (ii) (holding that while a prior aggravated assault and the charged murder both involved the appellant firing a gun at a vehicle leaving the scene of an argument, "occupied by men who were

13

unarmed and posed no threat whatsoever to [the appellant]," yet "significant differences diminished the probative value of the [prior] incident," including: the nature of the interpersonal relationships between the appellant and the two different victims; how long the respective disputes had been ongoing before the shootings; and the fact that the prior shooting occurred "at a single location" with the appellant "acting alone," while in the murder case the appellant "acted alongside" someone else and "drove to two locations . . . to confront the victim").

The trial court did not abuse its discretion by finding low prosecutorial need for the other acts to explain the circumstances surrounding Johnson's shooting or shed light on Flowers's intent. With respect to prosecutorial need to establish what happened that day, the trial court noted the presence of "several eyewitnesses" to the shooting and Flowers's recorded statement to law enforcement the day of the shooting. Thus, the trial court did not abuse its discretion when it found that "the probative value of the [other] acts is diminished by the availability of eyewitness testimony and

[Flowers's] recorded statement to law enforcement," to establish what happened that day.

With respect to prosecutorial need to "disprove [Flowers's] theory of self-defense," some of the witnesses were Flowers's family members, none of whom, according to the State, saw Johnson with a weapon. Moreover, in his recorded statement, Flowers admitted to shooting at Johnson thirteen times, five of which were after Johnson turned away. And Flowers fled the scene.

Thus, the trial court did not abuse its discretion by finding that the other acts offered diminished probative value regarding Flowers's intent. "The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point." *Harris v. State*, 314 Ga. 238, 263 (3) (a) (875 SE2d 659) (2022) (citation and punctuation omitted). See *Jackson*, 306 Ga. at 79 (concluding "negligible" prosecutorial need for evidence of an other-act shooting to prove intent to assault with a deadly weapon where "[n]either party ever contended that the shooting was unintentional"). Compare *Henderson v. State*, 318 Ga. 752, 754-757

(1) (900 SE2d 596) (2024) (concluding that "prosecutorial need" for other-act evidence was "significant because [the appellant] claimed to have 'blacked out' during the aggravated assault" and the appellant alleged self-defense. Thus, the State "needed evidence from which the jury could infer that his acts were intentional rather than defensive or committed while 'blacked out' or 'in a trance'").

The trial court did not abuse its discretion by finding that the possibility of unfair prejudice was high. Unfair prejudice pursuant to Rule 403 refers to the capacity of evidence "to lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged. Generally, such improper bases for a finding of guilt include a criminal defendant's bad character or his propensity for violence." *Baker v. State*, 318 Ga. 431, 441 (2) (a) (899 SE2d 139) (2024) (citation and punctuation omitted). The State specifically argued that it needed evidence of the five other acts to prove Flowers's "propensity for initiating and continuing violent encounters," and "propensity to resort to threat or use of firearms with little or no provocation," which are inherently prejudicial

16

purposes.

The trial court did not abuse its discretion by excluding all five acts pursuant to Rule 403.[10] See *Brown*, 303 Ga. at 162-163 (given the self-defense claim in a murder case, the probative value of intent based on other-act evidence of shooting at another person was "extremely low at best," especially where, inter alia, the State had "other admissible evidence" and the other act was not necessary to help explain what happened in the murder case, such that the danger of unfair prejudice "substantially outweighed" the probative value) (citation omitted).

*Judgment affirmed. All the Justices concur.*

---

[10] Because Flowers apparently used the same gun in the Burney and Wilcox acts that he used to shoot Johnson, reasonable minds could disagree about the admissibility of evidence of those acts. We nevertheless conclude that the trial court did not abuse its discretion by excluding evidence of those acts. See *Burns v. State*, __ Ga. __, __ (2) (907 SE2d 581) (decided October 15, 2024) (holding that a trial court's conclusions under an abuse-of-discretion standard "will generally not be disturbed as long as they are within the bounds of the law, based on correct, relevant facts, and within the range in which reasonable jurists could disagree") (cleaned up).