## S16A1001. PARKS v. THE STATE.
### (794 SE2d 623)

BENHAM, Justice.

Appellant Harold Parks seeks review of his convictions for crimes stemming from the shooting death of Terrence Washington.[1] For the reasons set forth below, we affirm.

1. Appellant contends the evidence was insufficient to convict. Viewed in a light most favorable to upholding the jury's verdicts, the evidence shows that on September 16, 2013, appellant became enraged that Washington's girlfriend had parked in a certain area outside their apartment building and threw a mug of coffee at her. A neighbor, who worked as a courtesy officer at the apartment complex and was coming home from work at another security job, saw the altercation and attempted to deescalate the situation. The victim also tried to deescalate the situation, but ended up arguing with appellant as well. Appellant's father was also nearby watching the argument, but did not interfere. The victim's girlfriend testified she saw appellant's father hand appellant a gun, but then appellant left the parking area and so she did not give what she had seen any more thought. The victim's girlfriend entered her vehicle and drove away, only to hear

---

[1] The crimes occurred on September 16, 2013. On July 31, 2014, a Cobb County grand jury indicted appellant on charges of malice murder, felony murder (aggravated assault), felony murder (possession of a firearm by a convicted felon), aggravated assault, and possession of a firearm during the commission of a felony. After a trial that took place December 8-12, 2014, the jury found appellant guilty of all charges. On December 12, 2014, appellant was sentenced to life in prison without parole for the malice murder count and five years to serve consecutively for the count of possession of a firearm during the commission of a felony. Appellant filed a motion for new trial on December 29, 2014 and an amended motion for new trial on May 7, 2015. On May 7, 2015, the trial court conducted an evidentiary hearing on the motion for new trial as amended and denied the motion on July 17, 2015. Appellant filed a notice of appeal on July 30, 2015 and an amended notice of appeal on September 30, 2015. Upon receipt of the record, the case was docketed to the April 2016 term of this Court and orally argued on June 21, 2016.

gunshots moments later. In the meantime, the courtesy officer contacted police because he feared the argument was not finished and, while on the phone, he too heard the gunshots. After the shooting stopped, the victim's girlfriend returned to the parking area along with police. A responding officer found the victim on the ground, bleeding and without a pulse. The victim's body was located on the side of the apartment building at the bottom of a stairwell which was near his apartment unit. Several witnesses testified they did not see the victim with a firearm, and no firearm was found near his body. The 9mm shell casings recovered at the scene indicated appellant fired at least 18 rounds. The medical examiner testified the victim had 29 distinct gunshot wounds and died from a wound inflicted by a bullet traversing his aorta and vena cava and causing him to bleed to death. The medical examiner also testified the gunshots were fired from more than three feet away and the victim was already on the ground when some of the shots were fired.

Prior to the shooting, the victim had told his mother, a close family friend, and his girlfriend that he was having a dispute with appellant over a parking space. The evidence showed the apartment complex did not assign parking spaces to residents, but appellant had complained to others that he wanted the parking space located outside the front door to his apartment. After the shooting, appellant disappeared and was not found until after Thanksgiving 2013, when authorities were alerted he had spent Thanksgiving with his minor sons. Appellant turned himself in because his children had been taken into protective custody. Pursuing a defense of justification, appellant testified at trial as follows:

> [W]e had a verbal altercation right here on the sidewalk and I noticed that he had a weapon in his pocket. So I stepped closer to [the victim] and we was still arguing at the time. So at that time, [the victim] attempted to reach for [the gun] and I grabbed it. And once I grabbed it I got it from [the victim], you know, struggling. And I twisted [the victim's] hand and I twisted the weapon out of [the victim's hand] and I fired.
>
> . . .
>
> Once I noticed it was a weapon, you could see the butt of the gun. So once I noticed I stepped closer to [the victim] but we still was in an altercation and talking. So when [the victim] reached for it I reached and grabbed and we got into a struggle over the gun. And I eventually removed the gun from [the victim's] hands. And my finger ended up in the trigger and I shot.

Appellant admitted more than once that the victim was unarmed at the time he fired the gun. After appellant shot the victim, he stated he dropped the weapon and fled from the apartment complex. No weapon, however, was at the scene, and no weapon was recovered from any other location during the investigation.

The evidence summarized above was sufficient to convict appellant of the crimes for which the jury returned verdicts of guilt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The jury was authorized to reject appellant's evidence of self-defense. *Bradford v. State*, 299 Ga. 880 (1) (792 SE2d 684) (2016).

2. Because appellant was tried after January 1, 2013, Georgia's new Evidence Code was in effect and applicable to his case. Appellant alleges the trial court erred when it admitted evidence of his 1990 conviction for aggravated assault pursuant to OCGA § 24-4-404 (b) which states in pertinent part:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

This Court has held:

> In determining the admissibility of "other acts" evidence, this Court has adopted the Eleventh Circuit's three-part test for admissibility under Federal Rule of Evidence 404 (b) which requires that the admitting court find (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act. [Cit.] When weighing the probative value of other acts evidence against its prejudicial effect, Georgia courts apply the balancing test set forth in OCGA § 24-4-403,[2] which similarly tracks its federal counterpart. See Fed. R. Evid. 403. On appeal, a trial court's decision to admit evidence pursuant to

---

[2] OCGA § 24-4-403 states: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

> OCGA § 24-4-404 (b) is reviewed for a clear abuse of discretion, a review requiring the appellate court to make a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." [Cit.]

*Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016).

In this case, the trial court held a pretrial hearing to determine whether the 1990 conviction would be admitted. The State showed the conviction resulted from appellant's pleading guilty to an aggravated assault where he participated in a shooting that occurred in the parking lot of an apartment complex and where the weapon used was a 9mm handgun. The State argued the evidence was admissible to show motive, intent, knowledge, identity and the absence of mistake or accident. The trial court admitted the evidence for all of the reasons asserted by the State; and, in accordance with OCGA § 24-4-403, concluded the probative value of the evidence outweighed any unfair prejudice. At trial, the trial court gave a limiting instruction to the jury before any Rule 404 (b) evidence was introduced. The Rule 404 (b) evidence consisted of the testimony of two victims who said they were shot during the incident which involved a dispute over drugs and money; the testimony of the investigating officer who testified his investigation found appellant and one other person were the main shooters during the incident; and a certified copy of the conviction which showed appellant pled guilty to the crime.

The trial court erred when it admitted appellant's 1990 conviction. No argument can be made for introducing the 1990 aggravated assault to show appellant's knowledge and absence of mistake or accident as to the crimes charged here; his *knowledge* was not at issue where the defense was justification, and he made no claim that he *accidentally or mistakenly* shot the victim. *Identity* and *motive* are equally inapplicable under the federal Rule 404 (b) case law that we recently endorsed in *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016) (concluding that Rule 404 (b) evidence was not admissible to prove identity where "the [prior and current] crimes were not so similar as to mark the murders as the handiwork of appellant" and "the modus operandi for each murder was relatively commonplace — these were not signature crimes"); id. at 726-727 (2) (explaining that "to be admitted to prove motive, extrinsic evidence must be 'logically relevant and necessary to prove something other than the accused's propensity to commit the crime charged,' " and holding that "evidence of the 1983 murder of a Mississippi state trooper during a prison

escape is unrelated and unnecessary to prove why appellant murdered a security guard in the course of a theft seven years earlier" (citation omitted)). Identity and motive are particularly inapposite here, where appellant claimed self-defense, thereby admitting that he was the person who shot the victim, and the motive for the prior aggravated assault was a dispute over drugs and money 24 years earlier, which had nothing to do with why appellant shot the victim in this case in a dispute over a parking space.

The only arguable permissible purpose of the other act evidence in this case was to show appellant's intent. We have held that intent is put at issue any time a defendant pleads not guilty and so evidence that goes to prove intent would be relevant. *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016). However, in this case, the evidence really has no purpose other than to show appellant's propensity toward violence. As the Tenth Circuit explained in *United States v. Commanche*, 577 F3d 1261 (10th Cir. 2009), relying on a Fourth Circuit case:

> Since [the defendant] admitted the [shooting] and claimed only that in doing so he acted in self-defense, the only factual issue in the case was whether that was the reason for the admitted act. The fact that [the defendant] had committed an assault on another [person] . . . [24] year[s] earlier had nothing to do with his reason for — his intent in — [shooting the victim]. All that the evidence of the prior conviction of assault could possibly show was [the defendant's] propensity to commit assaults on other [persons] or his general propensity to commit violent crimes. . . . This is exactly the kind of propensity inference that Rule 404(b)'s built-in limitation was designed to prevent.

Id. at 1268 (II) (B) (quoting *United States v. Sanders*, 964 F2d 295, 298-299 (II) (B) (4th Cir. 1992)). See also *Yusem v. People*, 210 P3d 458, 466 (III) (3) (Colo. 2009) ("A jury cannot reasonably conclude that Yusem was more likely to menace the van driver and less likely to act in self-defense without relying on the inference that Yusem bullied someone in the past while wearing a gun and so likely bullied someone again by brandishing a gun. Thus, the inference, at best, that may be drawn from the prior act is impossible to distinguish from the inference that Yusem has a bad character."); *Collins v. State*, 966 NE2d 96, 105 (II) (Ind. Ct. App. 2012) (concluding that the defendant's battery of a co-worker almost 30 years earlier was not relevant or probative to the charged crime of domestic violence). Accordingly,

we conclude the admission of the other acts evidence under the circumstances of this case was erroneous.

Nevertheless, any error is harmless in this case given the substantial evidence of appellant's guilt. See *United States v. Hosford*, 782 F2d 936, 939 (11th Cir. 1986) (where evidence of guilt is "overwhelming," erroneous admission of Rule 404 (b) evidence is harmless). It is undisputed appellant shot the victim. Appellant himself testified he wrested the gun away from the victim and admitted the victim was unarmed and was not posing a deadly threat[3] when appellant opened fire 18 times. Thus, the claim of self-defense falls flat. The admission of appellant's 1990 conviction for aggravated assault had no substantial influence on the outcome of this case. See *United States v. Watson*, 611 Fed. Appx. 647, 656-658 (I) (B) (11th Cir. 2015); *United States v. Albertie*, 382 Fed. Appx. 876, 879 (III) (11th Cir. 2010). Accordingly, there is no reversible error.

3. Appellant asserts the trial court erred when it admitted his other prior convictions based on his testimony during direct examination. More specifically, appellant argues his testimony did not open the door to allow evidence of his character to be admissible. At trial, appellant testified as follows:

> Q: And how have you, as a person, changed since 2000 — I mean, since 1990?
> A: Overall changed to be a man and learn responsibility and raise my kids.

The trial court ruled this colloquy was sufficient to allow the State to introduce appellant's four other felony convictions from 1993 (unknown felony), 1997 (aggravated assault and burglary), 2003 (receiving stolen property), and 2006 (breach with intent to defraud).[4] It is a close call as to whether this testimony opened the door to appellant's character. We note, however, that appellant testified as follows on direct:

> Q: Now you've also, you know, been in some other trouble throughout your life, correct?
> A: Correct.

Given the fact appellant testified he had become more responsible

---

[3] The forensic evidence indicated the victim was shot from a distance of more than three feet and was likely already on the ground when some of the bullets were fired.

[4] The 2006 conviction was from South Carolina. All of the other convictions were for crimes committed in Georgia.

since his 1990 conviction while also admitting he had been in "other trouble throughout [his] life," appellant's other felony convictions since 1990 became relevant evidence which the State was entitled to explore on cross-examination, regardless as to whether his character was implicated. See OCGA § 24-6-611 (b).[5] See also *Williams v. State*, 299 Ga. 834, 839 (2) (792 SE2d 336) (2016) ("a party has a right to a thorough and sifting cross-examination of an adverse witness with respect to matters raised in the witness' testimony").[6] The trial court did not abuse its discretion in allowing this evidence to come in.

4. Appellant contends the trial court erred when it limited his cross-examination of the medical examiner. The transcript shows trial counsel asked the medical examiner why he had resigned his employment and the medical examiner responded he had not resigned but rather had retired. When trial counsel attempted to probe further about the medical examiner leaving his job, the prosecutor objected on the grounds of relevancy, and the trial court sustained the objection. After the objection was sustained, trial counsel moved on to another line of questioning. At the motion for new trial hearing, appellant failed to proffer any evidence how further cross-examination on this issue affected appellant's substantial rights. See OCGA § 24-1-103 (a) (2). As such, the alleged error is not preserved for appellate review. See *United States v. Vitale*, 596 F2d 688, 690 (5th Cir. 1979) ("the propriety of a decision to exclude evidence will not be reviewed if an offer of proof was not made at trial"). Even when reviewed for plain error, see OCGA § 24-1-103 (d), there is no showing that appellant's substantial rights were negatively impacted by counsel's not being able to explore the medical examiner's departure from his job. Indeed, at the motion for new trial hearing, counsel testified that some of the medical examiner's testimony was beneficial to the defense, suggesting that discrediting his credentials may have worked to appellant's detriment. Accordingly, this allegation of error cannot be sustained.

5. Appellant alleges the trial court erred when it failed to allow trial counsel to withdraw his representation of appellant prior to trial. The record shows trial counsel filed a motion to withdraw on April 30, 2014, allegedly because appellant could not pay a retainer as agreed. A hearing was scheduled on the matter, but trial counsel

---

[5] OCGA § 24-6-611 (b) provides in pertinent part: "A witness may be cross-examined on any matter relevant to any issue in the proceeding. The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party."

[6] We note that *Williams v. State* was decided under the old Evidence Code pursuant to former OCGA § 24-9-64 (right of a thorough and sifting cross-examination), but its holding is not contradictory to the newly enacted OCGA § 24-6-611 (b).

did not appear and so the trial court denied the motion to withdraw on May 4, 2014. Trial counsel represented appellant at trial when it commenced on December 8, 2014. Inasmuch as trial counsel did not appear at the motion to withdraw hearing, he effectively abandoned the motion so the trial court did not err when it denied the motion. Since appellant otherwise did not complain to the trial court about counsel's representation of him throughout the trial and no other mention was made of the motion to withdraw, no complaints on the trial court's denial of that motion can be heard at this juncture.

6. Appellant alleges counsel rendered constitutionally ineffective assistance when he opened the door to appellant's prior convictions, when he failed to challenge the medical examiner's credentials, when he failed to object to certain hearsay, and when he failed to withdraw from representing appellant. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). For the reasons stated below, appellant has failed to meet his burden.

(a) While counsel may have been deficient in pursuing direct testimony that allowed for appellant's prior convictions to be admitted, appellant has failed to prove that but for this failure, the outcome of his trial would have been different. Appellant admitted he wrested the gun away from the victim and shot the victim while he was unarmed. The physical evidence showed appellant shot the victim at least 18 times. Appellant also admitted he fled the scene, leaving the victim to die. Given the substantial evidence of appellant's guilt, it is unlikely precluding these prior convictions from being admitted would have changed the outcome of the trial.

(b) In regard to the cross-examination of the medical examiner, trial counsel testified at the motion for new trial hearing that it was not beneficial to appellant's case to "tear down" the medical examiner's testimony because counsel said he needed the medical examiner to "validate" some other issues raised at trial. Thus, counsel made

a reasonable strategic decision not to pursue additional cross-examination of this witness. Such reasonable strategic decisions do not rise to the level of deficient performance. See *Washington v. State*, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014) ("[T]he extent of cross-examination [is a matter] of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances.").

(c) At trial, a resident of the apartment complex testified his sister was romantically involved with appellant. The resident testified he texted his sister after the shooting, warning her to stay away from appellant because people were saying appellant had killed someone. Appellant argues counsel should have objected to this testimony because it constituted hearsay. At the motion for new trial hearing, counsel testified he did not object because he did not view the testimony as detrimental, especially in light of the fact appellant was pursuing a claim of self-defense, an affirmative defense which required appellant to admit he shot the victim. We cannot say this strategy was unreasonable given appellant's theory of defense.

(d) Finally, appellant contends counsel rendered ineffective assistance by failing to withdraw from the case and by failing to request funding for experts and investigators. Appellant has made no proffer as to what evidence any hired investigator or expert would have provided at trial. Trial counsel testified he did not think it was necessary to hire an expert based on what he knew of the medical examiner's findings at the time and stated he was able to address any problem issues on cross-examination. Whether to present an expert witness is a strategic decision which does not typically constitute defective performance, and a defense attorney may reasonably decide to challenge a State's expert through cross-examination rather than by presenting a defense expert. See *Brown v. State*, 292 Ga. 454, 456 (2) (738 SE2d 591) (2013). Here, appellant has failed to show trial counsel's strategic decision was unreasonable. See id. at 457 (2). Appellant has otherwise failed to show that counsel's failure to withdraw from the case had any prejudicial effect. Accordingly, the trial court did not err when it denied appellant's motion for new trial based on his claims of ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 30, 2016.

*Raina J. Nadler*, for appellant.

*D. Victor Reynolds, District Attorney, John R. Edwards, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.