301 Ga. 277
FINAL COPY

S17A0313.  JOHNSON  v. THE STATE.

BOGGS, Justice.

Appellant Benjamin Johnson was convicted of murder in connection with the stabbing death of his brother, Timothy Johnson.[1] The trial court denied Johnson's amended motion for new trial, and he now appeals, asserting error in the admission of hearsay testimony concerning a prior altercation between the brothers and ineffective assistance of trial counsel in failing to object to the testimony or investigate the prior altercation. For the reasons that follow, we affirm.

Construed to support the jury's verdict, the evidence shows that on the night in question, appellant visited the victim and the victim's common-law

---

[1] The crime occurred on December 8, 2013. On March 4, 2014, a DeKalb County grand jury indicted Johnson for felony murder and aggravated assault. He was tried before a jury March 30-April 1, 2015.  The jury found Johnson guilty on both counts. He was sentenced to life imprisonment for felony murder; the trial court merged the aggravated assault charge with the felony murder charge.  See Malcolm v. State, 263 Ga. 369, 372-373 (5) (434 SE2d 479) (1993). Johnson's amended motion for new trial was denied on July 15, 2016, his notice of appeal was filed on July 25, 2016, and the case was docketed in this Court for the term beginning in December 2016. The case was submitted for decision on the briefs.

wife, Hurt, at their home.  Appellant and the victim were watching television and drinking in the den. Hurt was upstairs when she heard a commotion in the garage. When she went to the garage to investigate, she found the brothers had fallen over a treadmill and were "wrestling" on the floor. Neither brother had a weapon, and Hurt was able to step between them and break up the scuffle. Hurt tried to persuade the victim to help her take appellant home, and she told the men to stop arguing.

As she left the room to go upstairs, she heard the victim exclaim, "What the hell, Ben, you stabbed me." Hurt turned and saw appellant stabbing the victim; Hurt grabbed appellant from behind, but he turned around and Hurt thought he was going to stab her, so she started to run away. When she looked again, Hurt saw appellant standing over the victim and forcing him down the stairs while continuing to stab him. Hurt testified that the victim did not hit appellant and did not have a weapon in his hands. When the brothers fell over a table, the victim grabbed appellant's knife hand and Hurt was able to take the knife away from appellant, who then left the house. Hurt called 911 and the victim was treated on scene and transported to the hospital, where doctors discontinued resuscitation efforts. An autopsy revealed three stab wounds to the

2

victim's torso; the fatal wound, in his chest, passed through his ribs and into his heart.

At trial, Hurt testified about an incident that took place in Stone Mountain "either [during] the very end of the '90s, [or the] beginning of the year 2000."[2] According to Hurt, she received a call from the victim to come to a friend's house in Stone Mountain. When she arrived, she found the victim on the floor "all beat up," with cuts on his face, across his chest, and on his side. The victim told her that appellant and two of their cousins were at the appellant's apartment and they all were watching television and drinking; that the victim was arguing with appellant, who told him he needed to be quiet and listen because he was the "baby brother"; that appellant and the victim pushed one another and "they started fighting"; that the "cousins jumped in it"; and that they "jumped [the victim] . . . beat him up really bad," "cut" him, and left him "out in the parking lot." The victim got to a pay phone and called a friend, who picked him up and took him to his home and called Hurt to come get him.

Appellant took the stand and testified in his own defense. With respect to the Stone Mountain incident, he stated that although he was present, he did not

_____

[2] The parties refer to this as the "Stone Mountain incident."

hit the victim, but a cousin did. With respect to the incident resulting in the victim's death, appellant testified that the victim was an habitual heavy drinker and became "mad" when he was drunk. On the evening in question, Hurt and the victim were fighting, and Hurt began hitting the victim. Appellant stated that he stepped outside to smoke, and when he walked back in the victim attacked him without warning and began pounding his head into the ground. Appellant said he left the house and called the police on his cell phone, but returned to get his glasses, and the victim attacked him again. The victim continued to threaten him, and appellant retreated to the kitchen and picked a knife up "as a deterrent." When the victim charged up the stairs, appellant attempted to push the victim away and accidentally stabbed him with the knife. He testified that he did not know that he had stabbed the victim, did not intend to stab him, and did not intend to kill him. He acknowledged that he told police that he stabbed the victim "about three or four times," but claimed he was defending himself.

1. Although appellant has not raised the sufficiency of the evidence in his appeal, we note that it was sufficient to support his conviction under <u>Jackson v. Virginia</u>, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, appellant complains that the trial court

erred in admitting Hurt's hearsay testimony regarding the Stone Mountain incident under OCGA § 24-8-807.[3] But, pretermitting whether admission of that testimony was error, any such error was harmless in light of the substantial evidence of appellant's guilt and the limited pertinence of the testimony. Hurt testified in detail to appellant's lengthy and persistent attack upon the unarmed victim. Appellant did not deny that he was present and admitted that he stabbed the victim. Although he claimed at trial that he did not intend to stab the victim and did so accidentally while trying to stop an unprovoked attack, he told police that he stabbed the victim "about three or four times," which was borne out by the medical testimony. Therefore, even if admission of the evidence was error, any error was harmless here given the substantial evidence of appellant's guilt. See Parks v. State, 300 Ga. 303, 308 (2) (794 SE2d 623) (2016) (irrelevant

---

[3] That Code section provides:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:
> (1) The statement is offered as evidence of a material fact;
> (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
> (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.
> . . .

See generally Smart v. State, 299 Ga. 414, 421 (3) (788 SE2d 442) (2016).

5

evidence of 24-year-old assault conviction harmless error).

Moreover, as the trial court observed in its order denying appellant's motion for new trial, the Stone Mountain incident occurred between 10 and 15 years earlier. The victim did not tell Hurt how the incident began, nor did he specify that appellant caused his injuries, only that appellant and his cousins hit him and cut him, and he never stated that anyone had a weapon. While Hurt asked the victim, "Who cut you?" she did not testify to his response, but testified that he said he could not believe that his brother and cousins would beat him up and cut him. In his testimony at trial, appellant recounted the incident and stated that the victim suddenly and without warning threw a telephone and hit him in the face. He denied attacking the victim, stating that after the victim hit him with the telephone, his cousin took the victim outside. Later, the cousin told him that he punched the victim once, knocking him down. Moreover, the State did not cross-examine appellant regarding the incident, and, according to the trial court, neither side mentioned the incident in closing arguments.[4] It is doubtful that this decade-old, equivocal and uncertain testimony affected the verdict, particularly in light of the substantial evidence of appellant's guilt. See

_____

[4] Closing arguments were not transcribed.

Bridges v. State, 279 Ga. 351, 355 (5) (613 SE2d 621) (2005) ("in light of the marginal value of this evidence to the State's prosecution" and overwhelming evidence of guilt, error in admitting evidence was harmless).

3.  Because the admission of the testimony was harmless, we need not consider whether adequate notice was given of the State's intention to use Hurt's testimony under OCGA § 24-8-807. Nor can appellant show ineffective assistance of counsel.

> If the [evidence] itself would not constitute harmful error under the circumstances, then there is no reasonable probability that the trial lawyer's failure to object to it affected the outcome of the case. Therefore, [appellant] has not made the requisite showing of prejudice resulting from defense counsel's acquiescence in the impermissible [evidence].

Pearson v. State, 277 Ga. 813, 817 (5) (c) (596 SE2d 582) (2004). See also Skaggs-Ferrell v. State, 287 Ga. App. 872, 879 (4) (652 SE2d 891) (2007) ("As any error was harmless, [appellant's] claim of ineffectiveness fails.")

7

Judgment affirmed. All the Justices concur.

Decided May 30, 2017.

Murder. DeKalb Superior Court. Before Judge Coursey.

Margaret E. Heinen, for appellant.

Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Eric K. Dunaway, Agatha K. Romanowski, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.