**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 15, 2019**

# In the Court of Appeals of Georgia

A19A1122. GREEN v. THE STATE.

BROWN, Judge.

Anthony Green appeals from his conviction of aggravated assault and possession of a firearm by a convicted felon. He asserts that insufficient evidence supports his convictions and that the trial court erred by allowing the State to present evidence of his 1982 guilty plea to felony murder and to bolster its witnesses with prior statements. For the reasons explained below, we grant Green a new trial based upon the trial court's admission of evidence related to his 1982 guilty plea.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

> is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light

most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that on November 16, 2012, the 15-year-old victim was at her mother's home when adults were playing cards at the kitchen table. The victim testified that Green, her mother's boyfriend, was also playing cards. After an argument erupted between Green and the victim's brother, Green went outside through the front door. The victim further testified that she stood before the front door of the home because "[w]e were trying to stop him from going, my brother from going out the door." As the victim moved "from in front of the door," she blacked out, and the next thing she remembered was waking up on a stretcher in the hospital. She did not remember being shot in the lower back. The victim testified that Green had been outside for "two or three minutes" before she blacked out. The front door had no windows and there was no way to see through it.

A male eyewitness testified that the victim's brother "got into it" with Green after the eyewitness stated during the card game that Green had been looking at his hand. At some point, Green told the brother to come outside and "I got something for you anyway. I've been wanting you anyway." The witness testified that Green and the

2

brother were separated, and the victim then shut the front door and locked it. As the victim turned to walk away from the door, she was shot. The eyewitness testified that the victim was shot "probably about like thirty seconds" after Green went outside. Earlier in the evening, the eyewitness saw Green carrying "a small type pistol" on his side that appeared to be "a twenty-five, twenty-two" caliber weapon. Finally, the eyewitness testified that only the victim's brother was outside when he arrived after getting off of work around 9:00 p.m. He admitted that he did not see who shot the victim.

A female eyewitness testified that approximately 20 to 25 people were at the house for "a cookout." She recalled the victim's oldest brother telling Green to leave and Green responding that "he wasn't doing nothing." She described Green as "always be [sic] like that. He always argue." After Green left through the front door, "the door was shut." The eyewitness testified that she did not know how much time passed between Green leaving and hearing "a pop" before the victim "passed out." Later in her testimony, the eyewitness stated that Green "had just left" and the victim was shot as she was leaning her back against the door to close it. She testified that numerous people were standing outside when Green left.

The State called the victim's mother as a witness, and she testified that other than Green getting into an argument with someone other than her son, she did not remember what happened next because she "was very intoxicated." Several questions later, she stated that she recalled Green leaving and hearing his truck "crunk . . . up" after the door was shut. While she clearly remembered this fact, she testified that she did not remember hearing a gunshot or seeing her daughter fall down. The next thing she could recall at trial was "[g]etting to the hospital." She stated that she did not talk to Green again after her daughter was shot based upon the advice of detectives. She also testified that no one knows what happened "because the door was shut." At one point, her testimony changed from not remembering what happened to a denial of hearing a gunshot.

The responding police officer testified that he arrived "around 9:20 to 9:45" in response to a report that a person had been shot; the victim already had been taken to the hospital when he arrived. He observed a bullet hole in the door and the shell casing for a small caliber pistol on the front stoop. He testified that the female eyewitness told him that "when Mr. Green stepped outside, [the victim] closed the door and turned around. And as soon as she turned around [the witness] heard a shot

4

and then they saw [the victim] drop to her knees." He testified that the witness communicated clearly and did not "seem incoherent or extremely intoxicated."

A forensic investigator testified that the shell casing found on the front porch would have been expelled from a small twenty-five caliber automatic handgun. Based upon his investigation and the use of a trajectory rod, he determined that the bullet that hit the victim was fired from the front porch.

Over Green's objection, the State presented evidence, under OCGA § 24-4-404 (b), of his 1982 plea of guilty to felony murder by having a police investigator read the transcript of the guilty plea hearing. During his plea, Green stated that he and an accomplice went

> inside the store and the dude, we robbed him. And he said, you have . . . the money, just don't hurt me. And when the dude rushed at me, you know, that's when I, you know, I shot three times but I don't know that I hit him. . . . He ran back in the back of the store, you know, and I heard somebody, . . . he screamed or something. And so me and [my accomplice], we just ran and left.

The shooting took place in 1981.

1. Green contends that insufficient evidence supports his convictions because "[t]he evidence was vague and ambiguous and conflicting at best. There was no

evidence present that was clear and definitive that Defendant committed this act." We disagree. "The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. [Cit.]" *Strong v. State*, 265 Ga. App. 257, 258 (593 SE2d 719) (2004). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). In this case, the State presented evidence showing that Green got into an altercation with the victim's brother inside the house, taunted him to come outside because he had "something" for him; that Green had just left when the gun was fired from the front porch; and that Green was carrying a gun of a similar size caliber to the gun that was used to shoot through the door. We find this evidence sufficient to support Green's convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See *Boozer v. State*, 155 Ga. App. 525 (271 SE2d 675) (1980) (sufficient circumstantial evidence supported aggravated assault conviction even though no witness saw who fired a shot through a window).

2. Green asserts "that it was error for the court to allow the 404 (b) evidence [of his 1982 guilty plea] to be admitted into evidence due to the time proximity of the

6

conviction being too great and the prejudice it created with jurors which far outweighed its probative value." For the reasons explained below, we agree that the evidence should not have been admitted.

> A party seeking to admit other act evidence pursuant to
>
> OCGA § 24-4-404 (b) must show three things: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

(Punctuation omitted.) *Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018). OCGA § 24-4-404 (b) provides that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith," but such evidence can be admitted for other purposes, "including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In this case, the trial court instructed the jury that the evidence was introduced "for the limited purpose of proving knowledge, identity, intent, and to establish the absence of mistake or

accident." We will therefore examine each of these purposes to determine whether they are a proper purpose for admitting evidence of Green's conduct in 1981.

(a) *Identity*. Other act evidence offered for the purpose of showing identity "must be so similar as to demonstrate that the other act and the charged offense were 'signature crimes,' with the defendant using 'a modus operandi that is uniquely his.'" (Citation and punctuation omitted.) *Kirby*, 304 Ga. at 484 (4) (a) (i).

> A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies, or rapes.

(Citation and punctuation omitted.) *Amey v. State*, 331 Ga. App. 244, 249-250 (1) (a) (770 SE2d 321) (2015). In this case, we cannot say that Green's conduct in shooting a store clerk during the course of an armed robbery is "so similar to the charged offense that the charged offense must have been his handiwork." Id. at 250 (1) (a).

(b) *Absence of Mistake or Accident*. The Supreme Court of Georgia has held that other act evidence should not be admitted on this ground when the defendant "never claimed, nor was there any evidence to suggest, that the shooting was the

8

result of an accident or mistake. . . .” *Brown v. State*, 303 Ga. 158, 161 (2) (810 SE2d 145) (2018). See also *Thompson v. State*, 302 Ga. 533, 541 (III) (A) (807 SE2d 899) (2017) (trial court erred by admitting evidence of subsequent crime on this ground where there was “no allegation that [the defendant] accidentally or mistakenly . . . stole [the victim’s] property”).[1] The Eleventh Circuit has suggested that

> [u]sing prior bad acts to show lack of accident or mistake makes sense in cases where the alleged conduct could occur unwittingly. See, e.g., *United States v. Kapordelis*, 569 F3d 1291, 1313 (11th Cir. 2009) (allowing evidence of defendant’s prior sexual behavior to rebut claim that download of child pornography happened automatically).

(Punctuation omitted.) *United States v. Gray*, 771 Fed. Appx. 976, 980 (III) (B) (a) (11th Cir. 2019).

In this case, Green did not claim that he accidentally fired the shot through the door. Instead, his “defense at trial was that [the State] can’t prove that the defendant is the one who did the shooting.” Nor is there evidence suggesting that Green fired the gun by accident or mistake. While it was theoretically possible for a defendant in

---

[1] In *Thompson*, the Supreme Court of Georgia set aside the question of “whether a defense of mistake or accident is a prerequisite to admission of evidence under Rule 404 (b) for [these] purpose[s,]” 302 Ga. at 541 (III) (A), choosing instead to conclude “the circumstances here do not support admission.” Id.

Green's position to assert that the gun fired by accident or mistake, the circumstances of the 1981 shooting "do nothing to rebut that possibility." *Gray*, 771 Fed. Appx. at 980 (III) (B) (a). Accordingly, we conclude that lack of accident or mistake was not a proper purpose for admission of the other act evidence in this case.

(c) *Knowledge*. There are few Georgia cases addressing knowledge as a proper purpose for admission of other act evidence. From these cases, we can determine that "[a] defendant's knowledge may be at issue where . . . it is an element of the charged crime; that is, when knowledge itself is part of the statutory definition of the crime, and thus must be proven by the prosecution." (Citations and punctuation omitted.) *Green v. State*, 339 Ga. App. 263, 265 (1) (a) (793 SE2d 156) (2016). Knowledge is also

> properly in issue when the defendant claims that he or she was unaware that a criminal act was being perpetrated. In such cases, the hypothesis justifying the admission of other-acts evidence is similar to that invoked with intent: the likelihood that repeated instances of behavior, even if originally innocent, will have resulted in defendant's having the requisite state of knowledge by the time of the charged crime.

2 Weinstein's Federal Evidence, § 404.22 [2]. See also *State v. Jones*, 297 Ga. 156, 162 (2) (773 SE2d 170) (2015) (prior less safe DUI conviction admissible to show

10

knowledge in subsequent less safe DUI case); *United States v. Lockhart*, 732 Fed. Appx. 842, 845 (I) (B) (11th Cir. 2018) ("a 'mere presence' defense puts knowledge and intent at issue"). Another example of when knowledge is a proper purpose for admission of other act evidence is "[w]hen the other crime or act proves that the defendant has special knowledge that the perpetrator of the charged crime would need to have." Paul S. Milich, Georgia Rules of Evidence, §11:17, p. 340 (2018). But, "[w]here there is no special knowledge or talent required to commit the charged crime, the other crime or act should not be admitted simply to show that the defendant is 'capable' of, for example, robbing someone with a pistol or selling someone illegal drugs." Id. at 340-341. Finally, a defendant's "knowledge [is] not at issue where the defense was justification, and he made no claim that he accidentally or mistakenly shot the victim." (Emphasis omitted.) *Parks v. State*, 300 Ga. 303, 306 (2) (794 SE2d 623) (2016).

In this case, the State charged Green with aggravated assault with a deadly weapon, a general intent crime requiring no proof of knowledge. See OCGA § 16-5-21 (a) (2); *Booth v. State*, 301 Ga. 678, 684 (3) (804 SE2d 104) (2017). Green made no claim that he was unfamiliar with firearms. And as we have already discussed in Division (2) (b), Green did not claim accident or mistake, and no evidence was

11

presented showing that he fired the gun accidentally. Based upon the particular facts and circumstances of this case, we conclude that knowledge was not a permissible purpose for admission of Green's conduct in 1981. See *Parks*, 300 Ga. at 306 (2) (aggravated assault involving a shooting could not be admitted to show knowledge in malice murder case in which victim was also shot).

(d) *Intent.* Green "put his intent at issue by pleading not guilty, and he did not take any affirmative steps to relieve the State of its burden to prove intent." *Jackson v. State*, 306 Ga. 69, 77 (2) (b) (i) (829 SE2d 142) (2019). The Supreme Court of Georgia has held that in this circumstance,

> evidence that an accused committed an intentional act generally is relevant to show — the evidence, in other words, has *some* tendency to make more or less probable — that the same defendant committed a similar act with the same sort of intent. . . .

(Emphasis in original.) *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016). Accordingly, we conclude that the only proper purpose to admit the other act evidence in this case was to show Green's intent. Having found a proper purpose for admission of the evidence, we now turn to a review of the trial court's application of the Rule 403 balancing test.

(e) *Rule 403 Balancing Test*. A "Rule 403 analysis must be done on a case-by-case basis and requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense." (Citation and punctuation omitted.) *Castillo-Velasquez v. State*, 305 Ga. 644, 648 (2) (827 SE2d 257) (2019). This rule provides an extraordinary exception to the inclusivity of other act evidence under Rule 404 (b). *West v. State*, 305 Ga. 467, 474 (2) (826 SE2d 64) (2019). A trial court's decision to admit other act evidence under OCGA § 24-4-404 (b) will be overturned only where this is a clear abuse of discretion. *Kirby*, 304 Ga. at 479 (4). Finally, "in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (Citation and punctuation omitted.) *Strother v. State*, 305 Ga. 838, 847 (4) (d) (828 SE2d 327) (2019).

(i) *Probative Value*. "In considering the probative value of evidence offered to prove intent, these circumstances include the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic act and the charged offense, and the temporal remoteness of the other act." *Kirby*, 304 Ga. at 481 (4) (a). Here, the prosecutorial need for evidence was negligible with regard to intent as no evidence was presented showing that the shooting was unintentional and Green presented no

13

such defense. See *Jackson*, 306 Ga. at 78-79 (2) (b) (ii). There are also significant differences between the 1981 shooting and the charged offense. See id. (under new Evidence Code courts are required "to consider the dissimilarities as well as the similarities between the extrinsic act and the charged act"). In the former, Green shot a store clerk in the course of an armed robbery, and in the latter, it was alleged that he shot through a door following an altercation inside a home. While both involved firing a gun, the similarities end with that common fact. There was no allegation in the present case that anyone "rushed" at Green when the gun was fired. The probative value of the prior shooting is also diminished by its temporal remoteness from the charged act. The shooting took place more than thirty years before the charged offense, and Green was released from prison approximately seven years before the charged offense. Based upon Green's lengthy incarceration, we cannot say, however, that they were "so remote as to be lacking in evidentiary value." (Citation and punctuation omitted.) *Kirby*, 304 Ga. at 484 (4) (a) (i). Having considered all of the circumstances, we conclude that the probative value of the 1981 shooting to show Green's intent "was minimal at best." *Jackson*, 306 Ga. at 79 (2) (b) (ii).

(ii) *Prejudicial Effect*. The "major function of OCGA § 24-4-403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of

14

its prejudicial effect. . . ." (Citation and punctuation omitted.) *Kirby*, 304 Ga. at 480 (4). In this case, the trial court committed a clear abuse of discretion by failing to conclude that the probative value of the other act evidence in this case was outweighed by its prejudicial impact of Green having a propensity toward violence. *Jackson*, 306 Ga. at 80 (2) (b); *Parks*, 300 Ga. at 307-308 (2).

(f) *Harm*. Having concluded that the trial court abused its discretion by admitting evidence of the 1981 shooting, we must now determine whether Green should be granted a new trial based upon this error.

> The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.

(Citations and punctuation omitted.) *Kirby,* 304 Ga. at 478 (3) (c). "Where evidentiary error is deemed harmless, it is often true that the evidence was only 'marginal' to the prosecution's case. [Cit.]" *Thompson v. State*, 302 Ga. 533, 542 (III) (A) (807 SE2d 899) (2017).

In this case, the evidence regarding the identity of the person who shot through the door was entirely circumstantial; there was conflicting evidence about the number

15

of persons present, whether it was a small gathering for an indoor card game or a cookout attended by 25-30 people, and whether numerous people were standing outside when the victim was shot. Additionally, the jury was improperly advised by the trial court that the 1981 shooting could be used for the purpose of identity — a central issue in the case. Based upon the particular facts and circumstances of this case, "we cannot say that [the evidence against Green was] so overwhelming, or that the improper character evidence was so marginal, that the jury's verdict was not likely to be impacted." (Citation omitted.) *Sloan v. State*, Ga. App. (2) (f) (830 SE2d 571) (2019). We therefore reverse his convictions so that he may receive a new trial.

3. In his remaining enumeration of error, Green asserts that the State used the testimony of "officers" to "change" the mother's testimony through an allegedly "improperly admitted narrative portion of the police report." Inexplicably, he also asserts that the same evidence "served to bolster the testimony of the victim's mother about the shooting incident." Later, he states that a police officer "read the narrative from their report" and argues that this basically changed the testimony of the female eyewitness without an opportunity for him to cross-examine her. Based upon our grant of a new trial in Division 2, we conclude that these claims are rendered moot

16

as they "involve matters to be determined by the evidence and circumstances upon retrial." *Laster v. State*, 276 Ga. 645, 650 (6) (581 SE2d 522) (2003).

*Judgment reversed. Barnes, P. J., and Mercier, J., concur*.