312 Ga. 198
FINAL COPY

S21A0574. TIRABOSCHI v. THE STATE.

NAHMIAS, Chief Justice.

Appellant Thomas Tiraboschi was convicted of malice murder in connection with the strangulation death of his cellmate, Chris Lowery, at the Augusta State Medical Prison. Appellant's only claim on appeal is that the trial court erred by admitting evidence under OCGA § 24-4-404 (b) relating to his prior convictions. But any error in admitting this evidence was harmless, so we affirm.[1]

1. The evidence presented at Appellant's trial showed the

---

[1] Lowery was killed on July 6, 2013. In October 2013, a Richmond County grand jury indicted Appellant for malice murder and felony murder. His trial began on August 4, 2015, and the next day the jury found him guilty of both counts. The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder; the court purported to merge the felony murder count into the malice murder conviction, but that count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993). Appellant filed a timely motion for new trial, which he later amended through new counsel in June 2019. After an evidentiary hearing, the trial court denied the motion in September 2020. Appellant filed a timely notice of appeal, and the case was docketed to this Court's April 2021 term and submitted for a decision on the briefs.

following. On July 5, 2013, Appellant and Lowery were cellmates in the medical prison. Shortly after 6:00 p.m., Lowery, who had a history of cardiac disease and several other medical conditions, complained of chest pains to prison staff. He was then examined by physician assistant Claude Lett. Lett performed an EKG on Lowery and determined that both gastrointestinal medication that Lett administered and nitroglycerin, which is a medication that relieves chest tightness, had not relieved Lowery's chest pains. Lett then diagnosed the pains as musculoskeletal rather than related to a cardiac event and concluded that Lowery's condition was not life-threatening. Around 9:00 p.m., Lowery complained again, and the medical staff informed the officer who received the complaint that Lowery had already been examined and that his issue was not related to his heart problems.

At around 3:00 a.m., Appellant approached the guard booth for his dormitory and, while eating a bag of chips, said to Officer Zachary Quick, "Pardon me, officer, but I just killed my roommate."

2

When Officer Quick asked Appellant how he had killed his cellmate, Appellant said that Lowery had taken some pills, and Appellant had then "helped him" by choking him to death. When the officer asked Appellant why he had killed his cellmate, Appellant replied that Lowery had said he did not want to live.

Officer Charles Jones, the floor officer that night, came to the guard booth, and Appellant told Officer Jones that he had "killed his roommate" by choking Lowery. When Officer Jones asked Appellant why, Appellant replied that Lowery had said he was "tired of this s**t" and asked Appellant to help him kill himself.

Lowery was found lying in his cell with a bed sheet completely covering him. Lett and a nurse on the prison's medical staff were unable to resuscitate Lowery. On their way back to the medical side of the prison, Lett and the nurse both heard Appellant mumble "I killed him" as officers escorted Appellant away from the dorms. Lett also heard Appellant say that Lowery had said, "I can't take this s**t anymore and I want to die," so Appellant "choked him out."

According to Lett, Appellant also said that Lowery had changed his mind while Appellant was choking him and told Appellant that he did not want to die, but Appellant told Lowery, "It's too late, we're going to finish this."

Dr. Daniel Brown, a medical examiner and expert in forensic pathology, performed Lowery's autopsy. Dr. Brown noted petechial hemorrhaging on the white part of Lowery's eyes and discoloration of the upper chest and head caused by congestion of the blood vessels, all of which was suggestive of injury from lack of oxygen. Dr. Brown also noted lacerations and contusions on Lowery's lips, which were consistent with an object being placed on his mouth with pressure, and internal hemorrhaging in the side muscles of his neck, which was consistent with strangulation even though his hyoid bone remained intact. Dr. Brown observed that Lowery had a stent and an enlarged heart but did not see any other indications of cardiovascular problems or any evidence of a heart attack. Dr. Brown concluded that the cause of Lowery's death was mechanical

4

asphyxia combined with smothering and that the manner of death was homicide.

Appellant did not testify at his trial. His defense theory was that Lowery might have died from natural causes rather than strangulation and smothering.

2. Appellant contends that the trial court erred by admitting evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") relating to his prior convictions for vehicular homicide and theft by receiving. Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith[,]" but such evidence may be admissible for other purposes, including to prove intent or absence of mistake or accident.

Over Appellant's objection, the trial court admitted evidence relating to his prior convictions for the sole purpose of showing "lack of mistake." Two officers testified about the 1995 incident that led to Appellant's convictions, discussing his driving in a stolen SUV for

5

several miles during a high-speed police chase from Macon into Peach County; his intentional crash into an oncoming pickup truck, killing its driver; and the discovery of a sawed-off shotgun in the SUV. Police dashboard camera video recordings and photographs from the crash scene, along with Appellant's indictment, guilty plea form, and sentencing order, were also admitted into evidence. Prior to the presentation of this other-act evidence and again in the final charge, the court instructed the jury that it could consider the evidence "only to the extent that it may show the lack of mistake issue that the State is required to prove in the crimes charged in the case."

We need not decide whether this evidence was erroneously admitted, because any such error was harmless. The test for determining whether a nonconstitutional evidentiary error was harmless is whether it is highly probable that the error did not contribute to the verdict. See *Jackson v. State*, 306 Ga. 69, 80 (829 SE2d 142) (2019). In conducting this harmless-error review, "'we

6

review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.'" Id. (citation omitted).

It appears that the trial court admitted the other-act evidence to show lack of mistake with the expectation that Appellant might present a defense of mistake or accident. Instead, the central disputed issue at trial was causation — Appellant's claim that Lowery died from natural causes rather than strangulation and smothering by Appellant. As to that issue, the evidence of Appellant's prior and dissimilar crimes was irrelevant. But it also was not unduly prejudicial, particularly in light of the trial court's instructions limiting the jury's consideration of the evidence to a matter that turned out to be of no importance and the fact that the jury learned that Appellant had pled guilty to his prior crimes and indeed was still in prison for them at the time of the charged crimes. See *Howell v. State*, 307 Ga. 865, 875 (838 SE2d 839) (2020) (considering the trial court's instructions on the limited use of other-act evidence in determining harmless error, because "[w]e ordinarily

7

presume that jurors follow their instructions"); *Kirby v. State*, 304 Ga. 472, 485 (819 SE2d 468) (2018) (explaining that the risk that a jury may convict a defendant not for the offense charged but for his extrinsic conduct is greater where the extrinsic conduct was not already the subject of a conviction).[2]

And as to the central issue at trial, the evidence of Appellant's guilt was overwhelming. Appellant told two officers that he had killed his cellmate by choking Lowery to death, and shortly after those confessions, two members of the prison's medical staff heard Appellant say that he killed Lowery. Lett had determined that Lowery's chest pains were not heart-related or life-threatening, and Lowery's autopsy showed that his injuries were consistent with strangulation and suffocation and that there was no indication that he had suffered a heart attack, leading the medical examiner to conclude that Lowery died from mechanical asphyxia combined with

---

[2] We also note that although the closing arguments were not transcribed, Appellant does not assert that the other-act evidence was emphasized (or even mentioned) by the prosecutor.

smothering.

In sum, the jury heard compelling evidence of Appellant's guilt, and it is highly probable that the admission of the evidence relating to his prior convictions did not contribute to the jury's guilty verdict. See *Johnson v. State*, 301 Ga. 277, 279-280 (800 SE2d 545) (2017) (concluding that any error in admitting testimony about a prior incident "was harmless in light of the substantial evidence of appellant's guilt and the limited pertinence of the [other-act] testimony"). See also *Rodrigues v. State*, 306 Ga. 867, 871-872 (834 SE2d 59) (2019) (holding that any error in admitting evidence relating to the appellant's prior conviction for involuntary manslaughter was harmless, where the jury already knew that he was in prison at the time of the charged murder and there was other overwhelming evidence of his guilt); *Jackson,* 306 Ga. at 80-81 (holding that the erroneous admission of evidence of a prior shooting by the appellant a decade before the charged shooting was harmless in light of the other strong evidence of his guilt); *Manning v. State,*

303 Ga. 723, 725-726 (814 SE2d 730) (2018) (concluding that any error in admitting evidence relating to the appellant's prior convictions for aggravated assault and terroristic threats was harmless given the other substantial evidence of his guilt).

*Judgment affirmed. All the Justices concur, except Colvin, J., not participating.*

Decided August 10, 2021.

Murder. Richmond Superior Court. Before Judge Craig.

*Michael W. Tarleton*, for appellant.

*Jared T. Williams, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.